PIONEER MOTORS, INC. ET AL., PLAINTIFFS *v.* STATE HIGHWAY COMMISSION ET AL., DEFENDANTS.

No. 8651

Submitted February 5, 1946. Decided February 6, 1946.

165 Pac. (2d) 796

Messrs. Toomey, McFarland & Hall, Mr. Edmond G. Toomey, and Mr. E. M. Hall, all of Helena, for plaintiffs.

Mr. R. V. Bottomly, Atty. Gen., and Mr. William A. Brown, Special Counsel for Highway Commission, and Mr. H. O. Vralsted, Special Counsel for State Board of Equalization, all of Helena, for defendants.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

In this original proceeding plaintiffs attack the validity of the "State Highway Treasury Anticipation Debenture Act of 1945," Chapter 39, Laws of 1945, approved by the Governor on February 15, 1945, and by a majority of the electors voting upon it as Referendum Measure No. 49 at a special election provided by Chapter 149, Laws of 1945, to be held on June 5, 1945.

Section 2 of Chapter 39 authorizes the issuance of "a series of loans for the use and benefit of, and in the name of, the State of Montana, in the aggregate principal sum" of twelve million dollars "for the purpose of anticipating the revenue to accrue in the state highway fund of the State of Montana, matching federal highway grants, assuring the ability of the State of Montana to secure any funds or moneys allocated to the State of Montana and made available to it by acts of congress of the

United States in reference to the construction, betterment and maintenance of highways, for carrying on a post-war highway program calculated to bring the highway system of the State of Montana up to the established standards of the federal highway act, for other highway purposes, and for the redemption and payment in the year 1945 or the year 1946 of all state highway treasury anticipation debentures now outstanding * * *.''

Section 3 authorizes and directs the State Highway Commission ''to issue and sell at such time or times as it shall designate, but not later than'' December 31, 1946, sufficient of such debentures ''that the proceeds thereof, when added to the balance in the state highway treasury anticipation debenture interest and redemption fund of 1938, shall be sufficient to redeem all outstanding state highway treasury anticipation debentures issued under the authority of initiative measure No. 41 as amended by chapter 30 of the laws of the twenty-sixth legislative assembly of Montana for the year 1939.''

It further authorizes and directs the State Highway Commission to issue and sell such further debentures ''at such times, within a period of ten years from and after the approval of this act, and in such amounts as the said state highway commission shall from time to time determine necessary for the purposes herein provided.'' That section and sections 4 to 8 proceed to specify the form and the essential conditions of the debentures to be issued. Section 6 provides the manner of their sale.

Sections 5 and 7 provide that ''the issue and sale of said debentures shall constitute an irrevocable contract between the State of Montana and the legal owner of any of said debentures or coupons attached thereto that the license tax of five (5c) cents a gallon of gasoline on dealers as provided in this act shall not be reduced nor any part thereof diverted to any other purposes than those provided herein, and in'' sections 2381.22 and 2396.4, Revised Codes, and amendments thereof, ''so long as any of said debentures or said coupons remain· outstanding and unpaid''; that the State of Montana will cause such license

taxes to be promptly collected; that "out of the first proceeds received from the sale in the year 1945 or 1946 of state highway treasury anticipation debentures herein provided for [with the exception of any premium or accrued interest received from such sale, which is to go into the fund for the redemption of the new debentures], there shall be placed in the state highway treasury anticipation debenture interest and redemption fund of 1938 money which, when added to the balance in said fund, shall be sufficient to redeem all outstanding state highway treasury anticipation debentures issued under the authority of initiative measure No. 41, as amended by chapter 30 of the laws of the twenty-sixth legislative assembly of the State of Montana for the year 1939"; and that the state treasurer shall redeem the 1938 debentures as early as possible out of the latter fund as so augmented; that after sufficient funds have been provided for their redemption, the state treasurer shall in the manner specified set aside gasoline dealers' license tax money in the "state highway treasury anticipation debenture interest and redemption fund of 1945" for the payment of interest and principal on the debentures to be issued under this Act; and that the fund shall be used exclusively for that purpose; that the principal and interest on the debentures shall be payable solely from the five cent per gallon license tax; and that all other debenture sale proceeds "shall be placed in the state treasury and credited to the state highway fund, to be used for the other purposes hereinbefore set out, and such proceeds are hereby appropriated to be used for such purposes."

Section 9 provides that the license tax of five cents per gallon imposed on dealers or distributors by initiative measure No. 41 as amended, "and all gallonage taxes on dealers and distributors of gasoline imposed by prior laws, shall be repealed on the date on which the state treasurer shall have placed in the state highway treasury anticipation debenture interest and redemption fund of 1938 moneys which, when added to the balance in said fund, shall be sufficient to redeem" all out-

standing debentures issued under said initiative measure No. 41 as so amended.

Section 10 provides that ''from and after the time when the repeal of the tax provided in initiative measure No. 41 as amended shall become effective as hereinabove provided, until the principal and interest of all debentures issued under the authority of this act shall have been paid, * * * every dealer as referred to and defined in the gasoline license tax laws of the State of Montana now in effect * * * shall pay to the state board of equalization, for deposit in the state treasury, a license tax for the privilege of engaging in and carrying on such business in this state, in an amount equal to five (5c) cents for each gallon of gasoline (as defined in Section 2381.11, Revised Codes of Montana 1935), refined, manufactured, produced or impounded [compounded] by such dealer, and distributed, used or sold by him in this state, or shipped, transported or imported by such dealer into and distributed, used or sold by him within this state.'' So far as material here the provisions of this section are substantially the same as those of section 9 of initiative measure No. 41 as amended by section 1 of Chapter 30, Laws of 1939.

Section 12 provides that the Act shall be in full force and effect upon its passage and approval and proclamation to that effect by the Governor, providing that on its submission to the people at a general election it shall receive a ''majority of the votes cast for and against it by the electors of the state qualified to vote thereon.''

Chapter 149, Laws of 1945, approved fourteen days later, provided for the submission of Chapter 39 ''to the electors of the State of Montana qualified to vote thereon at a special election hereby called to be held on Tuesday, the 5th day of June, 1945, for their approval or disapproval by a majority vote.'' Then followed provisions for the publication of the Governor's proclamation of the special election, the distribution by the secretary of state and the several county clerks of copies of the

referendum measure, the printing of ballots, and the holding of the election.

It is admitted that at the special election 38,756 electors voted in favor of the referred measure and that 8,326 voted against it; that the only persons voting thereon were registered electors residing within the state who were taxpayers on property therein and whose names appeared upon the last completed assessment rolls for the respective counties in which they were registered for the election; that thereafter on June 26, 1945, the Governor issued a proclamation declaring the measure effective as of that date.

The complaint and briefs are unusually complete and well drawn and have greatly simplified the work of the court by outlining the various enactments and amendments providing for and affecting gasoline dealers' license taxes and debentures.

Twenty-two objections are advanced to the validity of the ▮▮▮ measure. The first and second objections are that the measure was not submitted or referred "to the people" as provided by section 2 of Article XIII of the Constitution of Montana, nor "to the people of the state" as provided by section 1 of Article V thereof. However, those sections are qualified and controlled by section 2 of Article IX of the Constitution, which provides that "if the question submitted concerns the creation of any levy, debt or liability" the voter, in addition to possessing the general qualifications, "must also be a taxpayer whose name appears upon the last preceding completed assessment roll," in order to be entitled to vote thereon. The measure manifestly creates a liability. State ex rel. Diederichs v. State Highway Commission, 89 Mont. 205, 296 Pac. 1033; Martin v. State Highway Commission, 107 Mont. 603, 88 Pac. (2d) 41. It was therefore submitted to the proper voters.

The third objection is that the provisions of Chapter 39 for submission are conflicting in that they provide for the submission "to the people" and also to a smaller group, namely, "the electors of the state qualified to vote thereon." However, as noted above, with reference to measures which concern the

creation of levies, debts or liabilities, section 2 of Article IX of the Constitution narrows the meaning of the expression "to the people" to voters who have the added qualification as taxpayers and appear upon the last assessment roll.

The fourth objection is that there was no valid submission of Chapter 39 to the voters because of the inconsistency between its own provision for its submission at a general election, and the provision of Chapter 149 for its submission at a special election. The two provisions are inconsistent, since section 531, Revised Codes, provides that the regular biennial election is "to be known as the general election." However, where two statutes are inconsistent, the later of course supersedes the earlier to that extent, thus effectively eliminating the inconsistency.

The fifth objection is that the submission was not valid because of the limitation imposed by section 2 of Article IX, supra, and by Chapter 28, Laws of 1945, to voters who are also taxpayers, whereas Chapter 149, supra, assumed to submit Chapter 39 to the vote of electors "qualified to vote thereon" and the governor's proclamation assumed to submit it to the "qualified voters." Since, under the constitutional provision mentioned, the taxpaying voters, to whom the measure was submitted, were the "qualified voters" and the ones "qualified to vote thereon," the objection is not tenable.

The sixth objection is that the submission at a special election violates section 2 of Article XIII which provides that no debt or liability shall be created which singly or in the aggregate with existing debts or liabilities exceeds $100,000, with certain exceptions, unless the law authorizing it shall have been submitted to the people at "a general election." However, as this court has heretofore held, the words "general election" in this constitutional provision do not necessarily mean the regular biennial election but a statewide election at which all those entitled to vote may do so. State ex rel. Diederichs v. State Highway Comm., supra; Arps v. State Highway Comm., 90 Mont. 152, 300 Pac. 549. Obviously the statutory definition in

section 531, supra, cannot control the meaning of the constitutional provisions. Furthermore, when in section 1 of Article V the framers of the Constitution had occasion to mention the biennial election, they referred thereto not simply as "a general election" but as "the biennial regular general election." In this connection it should be noted that the provision of that section is that "all elections or measures referred to the people of the state shall be had at the biennial regular general election, except when the legislative assembly, by a majority vote, shall order a special election"; thus the term "a special election" is contrasted, not with "a general election" but with "the biennial regular general election," and there is no necessary inconsistency between the provisions of section 1 of Article V and section 2 of Article XIII.

The seventh and eighth objections are that the election was void and Chapter 39 therefore invalid, because the county clerks of eight named counties closed registration for the election on May 5th rather than on May 6th, 1945, and that the county clerks of two counties named did not mail copies of the Act to all the qualified voters as provided by law. It is unnecessary to examine these specifications, for it is well settled that where a statute has been approved by voters, election informalities not shown to have affected the results will not be considered. Potter v. Furnish, 46 Mont. 391, 128 Pac. 542; State ex rel. Hay v. Alderson, 49 Mont. 387, 142 Pac. 210, Ann. Cas. 1916B, 39; Martin v. State Highway Comm., supra. Here, in view of the fact that for every two votes against the measure there were nine in favor of it, resulting in a favorable majority of 30,430 votes, it is clear that the matters alleged, if erroneous, cannot have affected the result.

The ninth, tenth and eleventh objections are that Chapter 39 violates section 2 of Article XIII of the Constitution in that it does not specify the purpose to which the funds are to be applied, that it does not provide for the levy of a tax, and that it does not fix the time within which the proposed debt must be paid. However, it is apparent that the Act clearly does

specify the purpose (section 2), provide for the levy (sections 5 and 10), and fix the time within which the debt must be paid (section 3), namely, ten years after the issuance of the debentures, the last of which must be issued within ten years after the passage and approval of the Act.

Plaintiff contends that the chapter expresses several purposes rather than a purpose as required by this section of the Constitution. However, this court has several times decided otherwise with reference to the entirely analogous question whether similar acts contravene section 33 of Article V as containing more than one subject by authorizing the issuance of bonds or debentures for several unrelated or unconnected purposes. Martin v. State 'Highway Comm., supra; Arps v. State Highway Comm., supra; State ex rel. Bonner v. Dixon, 59 Mont. 58, 195 Pac. 841, 847. In the Bonner case it was held that the issuance of bonds for the construction, repair and equipment of necessary buildings at seven different state educational and custodial institutions was not for more than one purpose and subject. The court said, with regard to the similar provision of that section:

"It is clear to us that the act does not contravene this provision of the Constitution, as such law manifestly embraces but a single purpose, viz., the issuance and sale of state bonds whereby funds may be raised and made available for buildings and betterments of certain state institutions named, under the control of the State Board of Education. In State v. Ross, 38 Mont. 319, 99 Pac. 1056, this court, speaking through Mr. Justice Holloway, said: 'In Evers v. Hudson, 36 Mont. 135, 92 Pac. 462, this court, in considering a like objection to a statute, said: "The object of the constitutional provision now under consideration is not to embarrass honest legislation, but to prevent the vicious practice, which prevailed in states which did not have such inhibitions, of joining in one act incongruous and unrelated matters. The rule of interpretation now quite generally adopted is that, if all parts of the statute have a natural connection and can reasonably be said to relate, directly or in-

directly, to one general and legitimate subject of legislation, the act is not open to the charge that it violates this constitutional provision; and this is true no matter how extensively or minutely it deals with the details looking to the accomplishment of the main legislative purpose. 26 Am. & Eng. Ency. of Law (2d Ed.) 575. Or, stating the converse of the proposition, it may be said that if, after giving the act the benefit of all reasonable doubts, it is apparent that two or more independent and incongruous subjects are embraced in its provisions, the act will be held to transgress the constitutional provision, and to be void by reason thereof." * * *'

"In State [ex rel Hay] v. Alderson, 49 Mont. 387, 142 Pac. 210, Ann. Cas. 1916B, 39, this court stated the true rule applicable, in the following language: 'We have repeatedly held that the unity required by this section is served notwithstanding the existence of many provisions in an act where such provisions are germane to the general subject expressed.' "

This court held likewise in the Martin case, supra, with reference to the almost identical purpose expressed in Initiative Measure No. 41. In that decision it said [107 Mont. 603, 88 Pac. (2d) 44] : "The main purpose and object of Initiative Measure No. 41 is to raise revenue for highway construction and betterment. All provisions of the Act have a natural connection, and relate directly or indirectly to this one object and purpose. This being so, the Act is not invalid as containing more than one subject. Merchants' Nat. Bank [of Glendive] v. Dawson County, 93 Mont. 310, 19 Pac. (2d) 892, and cases therein cited. An Act similar in purpose and containing a title practically the same as that here was held not open to the objection here made, in Arps v. State Highway Comm., 90 Mont. 152, 300 Pac. 549."

What was said in those cases with reference to singleness of subject or purpose under section 33 of Article V is equally true of singleness of purpose under section 2 of Article XIII.

With reference to the alleged delegation of legislative power by a provision in that initiative act similar to the one here in question, this court said in the Martin case: "It is contended

that since the amount of debentures to be issued, the time when to be issued and the interest rate subject to a maximum rate are left in the discretion of the Highway Commission, the Act must fall because delegating legislative power. This court in Herrin v. Erickson, 90 Mont. 259, 2 Pac. (2d) 296, held that under section 2 of Article 13 of the Constitution, the law itself must create the debt and not leave it to succeeding legislative assemblies to act on the authorization. Here no further legislative act is necessary to create the debt in the maximum of $3,-000,000. This case, on this point, is identical with that of Arps v. State Highway Comm., supra, wherein a series of loans to be made from time to time subject to a maximum amount was upheld. That case is decisive of this on the point now being considered. No further legislation is necessary to place sufficient proceeds from the tax levy in the Debenture Redemption Fund for retirement of the debentures or for any other purpose.'' Therefore there is no delegation of legislative power and the objection has no merit. The question concerning the sufficiency of the tax provided to pay the interest and principal of the debentures will be discussed further with the twentieth objection.

The twelfth objection is that the measure is contrary to section 12 of Article XII of the Constitution in appropriating public money for a longer period than two years. However, this court has repeatedly held that the provision has no application to bond and debenture measures. State ex rel. Bonner v. Dixon, supra; State ex rel. Tipton v. Erickson, 93 Mont. 466, 19 Pac. (2d) 227; State ex rel. Blume v. State Board of Education, 97 Mont. 371, 34 Pac. (2d) 515. In Martin v. State Highway Comm., supra, this court said, with reference to the same objection to Initiative Measure No. 41: ''The word 'appropriation' as there used does not have application to an Act providing for the issuance of bonds or debentures, wherein the Act creating the debt also levies a tax sufficient to pay the debt. State ex rel. Bonner v. Dixon, supra. To hold otherwise would be to hold that a bond issue could never extend over a period of more

than two years; because if a biennial appropriation to retire such a debt is necessary, the legislature would have the right to withhold the appropriation, and therefore the law creating the debt would, in effect, be repealable contrary to the command of section 2, Article 13. The contention that the proceeds from the gasoline license tax sufficient to retire the debentures cannot be appropriated for more than two years is untenable.''

The next three objections are that for various asserted reasons Chapter 39 is not subject to referendum. However, even if unnecessary, its submission to and approval by the qualified voters cannot have had the effect of invalidating the Act. As this court pointed out in Arps v. State Highway Comm., supra [90 Mont. 152, 300 Pac. 556]: ''It became in full force and effect as a law 'after its passage and approval' by the Governor, and all that remained was the submission of such law to the qualified electors on the question as to whether the state indebtedness proposed and means of payment should be approved. Though the indebtedness authorized could not be incurred without submission of the question to the electors and obtaining their approval, the act providing for the election to submit the question was none the less a law regularly passed by the Legislature and approved by the Governor. It needed nothing further to give it vitality. The voters had nothing whatsoever to do with its enactment, but under its provisions, in conformity with constitutional requirements, were called upon only to pass on the question as to whether the indebtedness proposed by it should be incurred. It contains all of the completeness of a law regularly enacted by the Legislature and approved by the Governor, and the mere fact that it provided the machinery for submitting the question to the people as to whether the indebtedness should be incurred and means provided for its payment, does not render it any the less a law of this state.'' Obviously, if its submission were unnecessary, the Act would be no less a law after its submission than before.

The sixteenth objection is that the Act does not provide authority for the state treasurer to disburse the revenue

to be collected thereunder in payment of principal and interest of the debentures as provided by section 34 of Article V. That objection is not tenable since, as this court held in Martin v. State Highway Comm., supra, with reference to initiative measure No. 41, the constitutional provision does not apply. Moreover, even if applicable this section does not require the introduction of an appropriation bill, the requirement being met in any lawful manner. State ex rel. Toomey v. State Board of Examiners, 74 Mont. 1, 238 Pac. 316. In view of the constitutional requirements with reference to the creation of debt (section 2 of Article XIII), and the provisions of Chapter 39, the latter constitutes ample authority for the prompt payment of principal and interest of the debentures, as well as a contract with the purchasers of debentures that they will be so paid.

The seventeenth objection is that the Act violates section 25 ▓▓▓▓ of Article V by revising, re-writing, amending and extending the gasoline dealers and distributors' license tax laws of the state in vital and material features, by reference only and without re-enacting and publishing the said laws at length. The objection is not tenable, for the chapter expressly provides for the repeal and re-enactment of the only provision which it affects, expressly repealing the five cent per gallon tax levied under prior law for the payment of 1938 debentures when no longer necessary for that purpose, and expressly re-enacting, effective as of the same moment, a like provision for the payment of the debentures to be issued under this Act. The other provisions of the existing statutes are not affected except to the extent to which they may be inconsistent with the provisions of Chapter 39. They are not self-terminating by their own provisions and it was not necessary to extend or reenact them. On the other hand, the chapter makes no attempt to revise, rewrite, amend or repeal them.

The eighteenth objection is that the chapter would add a ▓▓▓▓ second five cent tax in addition to the five cent tax heretofore levied for the payment of the 1938 debentures. This objection is obviously invalid, for, as stated above, sections 9

and 10 of the Act clearly provide for the simultaneous repeal of the old five cent tax and the effectiveness of the new.

The nineteenth objection is that such license tax may not be imposed under section 1 of Article XII. However, it is well settled that such license tax is valid. Hart Refineries v. Harmon, 278 U. S. 499, 49 S. Ct. 188, 73 L. Ed. 475; Continental Oil Co. v. Walker, 9 Cir., 285 F. 729; Arps v. State Highway Commission, supra.

The twentieth objection is that the Act violates section 1 of Article IV and section 2 of Article XIII of the Constitution by failing to specify and by delegating to the State Highway Commission legislative authority to determine what debentures might be sold in each of the years 1945 to 1955, inclusive, and therefore the authority to determine what the indebtedness shall be. The argument is that the language of this court in State ex rel. Campbell v. Stewart, 54 Mont. 504, 171 Pac. 755, 758, Ann. Cas. 1918D, 1101, is controlling in which it was said that "the very terms of the section imply and contemplate a specific obligation created by the Legislature itself, of such a character that computation will disclose in advance what tax levy is requisite to pay the interest on and to extinguish the debt at its certain maturity"; but the application of that language was to an indefinite debt to be paid from a property levy which in the nature of things could not be definite. It is not applicable to Chapter 39, which provides for a definite license fee of five cents per gallon until the debentures are paid in full. In State ex rel. Bonner v. Dixon, supra, this court not only emphasized the purpose and meaning of the provision, but held that the question of the sufficiency of the tax to pay the principal and interest of the bonds was addressed to the Legislature in the absence of an affirmative showing of its insufficiency. The court said: "Initiative measure No. 19 carries, in section 7, a provision for the levy of a tax. It is indefinite as to the time during which it shall be operative and the tax levy is limited. However, it must be remembered that — 'The legislative assembly shall not in any manner create any

debt except by law which shall be irrepealable until the indebtedness therein provided for shall have been fully paid or discharged.' Section 2, art. 13, Const. By section 3, the denomination of the bonds, date of issuance, and date of redemption are left to the judgment and discretion of the State Board of Examiners, and direction is made that they shall be due 20 years from their date, redeemable at any time after 10 years and bear interest at the rate of 5½ per cent. per annum, payable semi-annually. There is no merit to this objection. It is purely a legislative question, and, in our opinion, is foreclosed by former decisions of this court."

There is no showing of insufficiency of the levy here. On the contrary, the record affirmatively shows that during the ten years from 1936 to 1945, inclusive, the last three of which included stringent war-time gasoline rationing, the net gasoline license tax proceeds placed in the state highway fund averaged more than four and one-half millions of dollars annually, or over one-third of the total bond issue, the payment of which is to be spread over at least ten years. In the Bonner case, supra, the court found that like authority conferred by an Act on the state board of examiners did not violate the constitutional provisions, and in Martin v. State Highway Commission, supra, as above stated, this court found likewise with regard to Initiative Measure No. 41, the 1938 gasoline debenture law, which in this respect was identical with Chapter 39. In this instance also the provision is sufficiently definite to comply with the constitutional provisions.

The twenty-first objection is, "That said Act is ambiguous and uncertain in that the form of the proposed debentures does not express, in terms, an enforceable obligation or meet the requirements of a definite, legal contract marketable in the money marts of the nation." Whether the debentures authorized by the chapter will be "marketable in the money marts of the nation" must at this stage be a matter of opinion and one with which we are not here concerned, although they appear not to differ very materially from the 1938 debentures

and no showing has been made of a less favorable market. At any rate, the question which confronts the court is whether the Act is so ambiguous and uncertain in the respect mentioned as to be impracticable of application. An examination of the form provided for the proposed debentures, and of the statutory requirements therefor, does not disclose any ambiguity, uncertainty or other defect impairing them as enforceable obligations or definite legal contracts. It contains the definite, fixed promise of the State of Montana to pay the principal amount of the debentures and the interest thereon at certain definitely specified times. We do not find any tenable basis for the objection.

The twenty-second objection is that neither the Legislative Assembly nor the defendants have shown the estimated annual revenues under the Act, or whether the Act will produce sufficient revenues to pay off the 1938 debentures with interest and to proceed with the construction, reconstruction, maintenance and repair of highways. This objection is answered by what we have said in our discussion of the twentieth objection, supra, concerning the sufficiency of the tax levied to pay the indebtedness.

We find no reason for condemning the Act in question, or for restraining the issuance and sale of the debentures or the collection of the taxes.

The writ applied for is denied.

Associate Justices Morris, Adair, Angstman, and Cheadle concur.