THOMAS, PLAINTIFF, *v.* BOARD OF EXAMINERS, ET AL., DEFENDANTS.

No. 8915

Submitted June 15, 1949. Decided June 24, 1949.

207 Pac. (2d) 553

Messrs. Smith, Boone and Rimel, Missoula, for the Appellant. Mr. Smith argued the cause orally.

Arnold H. Olsen, Attorney General and H. D. Carmichael, Asst. Attorney General, for Respondent. Mr. Carmichael argued orally.

MR. JUSTICE METCALF:

This is an original proceeding to enjoin the board of examiners of the state of Montana from issuing and selling University of Montana building bonds authorized by Chapter 249, Laws of 1947, and Chapter 88, Laws of 1949. The plaintiff is a citizen and taxpayer of the state of Montana whose property would be subject to increased tax if the bonds are valid.

The attorney general filed an answer admitting all the allegations of the plaintiff's complaint and denying only the conclusions drawn by the plaintiff from those facts alleged. The attorney general affirmatively alleges that a levy of one mill will raise sufficient revenue to pay the interest on the bonds to be issued and retire the principal indebtedness. This affirmative

matter is admitted by the plaintiff's reply. The effect of the pleadings is that none of the facts is in issue.

Chapter 249, Laws of 1947, authorizes the legislative assembly to direct the state board of examiners to issue bonds in the amount of five million dollars in excess of the constitutional limit of indebtedness in order to obtain money to be used for construction and equipping of necessary buildings and the acquisition of grounds therefor at the six units presently comprising the University of Montana. The board of examiners is given the power to determine the amount of the bonds and the time at which the bonds would be issued. The bonds are to be issued in such denominations as the board of examiners determines and are to be payable serially within a period of not to exceed twenty years and to bear interest at not to exceed four per cent per annum. The Act further provides that the proceeds of the bonds are to be deposited in a special fund and to be used only for the purpose of constructing and equipping the buildings and acquiring the land therefor.

Section 7 of the act provided for a referendum at the general election in 1948 and for the form of ballots and method of voting on the Act. Section 7 will be subsequently considered in greater detail.

The Act was submitted to the people at the general election November 2, 1948. A majority of the persons allowed to vote upon the referendum cast their ballots in favor of the act.

The Thirty-first Legislative Assembly thereupon passed Chapter 88, Laws of 1949, which authorizes and directs the board of examiners to issue the bonds for the purposes set forth in Chapter 249, Laws of 1947.

The plaintiff questions the authority of the board of examiners to issue and sell the bonds. The first question presented is whether Chapter 249, Laws of 1947, has provided for the levy of a tax sufficient to pay the interest on, and extinguish the principal of such debt within the time limited by such law as required by section 2, Article XIII of the Montana Constitution.

The Act provides: "There shall be levied annually upon all

property of the State of Montana subject to taxation an ad valorem tax upon each dollar of the taxable valuation of such property sufficient to pay the interest accruing on said bonds as such interest shall fall due, and the payment of the bonds as they serially become due, said levy, however, not to exceed two and one-half (2½) mills per annum, until the indebtedness herein provided for shall have been fully paid and discharged. * * *'' Sec. 6, Chapter 249, Laws of 1947. The plaintiff contends that the Constitution requires that the Act itself should set the rate of levy.

The Act does not levy the precise millage rate but it does provide that a sufficient levy be made to pay the interest accruing and repay the serial bonds as they come due. All the factors for the determination of the millage rate appear in the Act. It then becomes merely a matter of mathematical computation.

The same question was canvassed in State ex rel. Tipton v. Erickson, 93 Mont. 466, 19 Pac. (2d) 227, 230, where this court said: ''It is essential to the validity of a levy that it be made by the Legislative Assembly. The power to levy the tax rests in the Legislative Assembly alone, and cannot be delegated. If, however the act does create the levy and so provide that fixing the rate is a matter of mere arithmetical computation, the ministerial duty of fixing the rate may be imposed upon the state board of equalization.''

In that case the levy provision was similar to the one involved in the instant case, sec. 3, Chapter 10, Laws of 1933, but section 3 also provided that the state board of equalization calculate and determine the rate of tax levy required each year. There is no such provision in Chapter 249, Laws of 1947, but by the general statutes prescribing the duties of the state board of equalization the same result is reached. Sec. 2147 et seq., R. C. M. 1935.

The plaintiff cites Herrin v. Erickson, 90 Mont. 259, 2 Pac. (2d) 296, but that case is explained and distinguished in State ex rel. Tipton v. Erickson, supra, and the distinction therein is

equally applicable to the case at bar. In addition to the authorities cited in State ex rel. Tipton v. Erickson, supra, see also 3 Cooley on Taxation, 4th Ed., pp. 2058 and 2084, secs. 1018 and 1031; 51 Am. Jur., "Taxation," sec. 656, p. 621; State v. Executive Council of State of Iowa, 207 Iowa 923, 223 N. W. 737.

The plaintiff contends that in setting a maximum levy of two and a half mills the legislature has provided for a limit that at some time in the future might be insufficient to produce a sum adequate to pay the interest and extinguish the debt. It is admitted that a levy of one mill would be adequate under present conditions to provide an amount sufficient to comply with the constitutional mandate and the statutory requirements. Unless there is a showing that the levy is actually insufficient this court cannot interfere with a purely legislative function and declare that a hypothetical deficiency under a contingency that in all probability will never occur will invalidate the Act. As was said in State ex rel. Lyman v. Stewart, 58 Mont. 1, 190 Pac. 129, 133, "Whether the levy of one-half mill on the dollar is sufficient to meet the obligation is a legislative question with which the court has nothing to do. State v. Holland, 37 Mont. 393, 96 Pac. 719. No showing is made that it will not be sufficient, and for the purposes of this hearing it must be presumed that it will be ample." Quoted and approved in State ex rel. Bonner v. Dixon, 59 Mont. 58, 195 Pac. 841. In Nordquist v. Ford, 112 Mont. 278, 114 Pac. (2d) 1071, the levy in language exactly the same as Chapter 249, Laws of 1947, except that the maximum was one-half mill instead of two and one-half mills, was approved.

The next question raised by the plaintiff is the validity of the referendum election at which Chapter 249, Laws of 1947, was referred to the people. Section 7 of Chapter 249, provided that it should be the duty of the secretary of state to submit the measure "to the people of the State of Montana" at the general election in November, 1948 "in accordance with the provisions of the constitution and the laws of the State of Montana relative thereto." The title of the Act was to be printed on the offi-

cial ballot and squares were provided so that the voters could vote "for" or "against the bond issue for the University of Montana building bonds for constructing and equipping necessary buildings, other permanent improvements, acquisition of necessary grounds therefor, in and about the University of Montana, consisting of the six units now existing." Section 7 further provided that "each qualified elector" designate his preference on the ballot.

The election clerks and judges at the general election of November 1948 permitted only registered electors who were taxpayers upon property within the state and whose names appeared upon the last completed assessment roll for state, county and school district taxes to vote upon the referendum.

Section 2, Article XIII, of the Montana Constitution requires that laws creating an indebtedness of more than $100,000 be submitted "to the people." It is plaintiff's contention that since section 7 of Chapter 249, Laws of 1947, required that the referendum on the bonds be submitted "to the people of the State of Montana" and section 2, Article XIII, of the Constitution requires that the question of the creation of an indebtedness in excess of the constitutional limit be submitted to "the people" the submission of the referendum to taxpayers only was invalid. This same question was raised in Pioneer Motors, Inc., v. State Highway Commission, 118 Mont. 333, 165 Pac. (2d) 796, 799, and this court there said: "The first and second objections are that the measure was not submitted or referred 'to the people' as provided by section 2 of Article XIII of the Constitution of Montana, nor 'to the people of the state' as provided by section 1 of Article V thereof. However, those sections are qualified and controlled by section 2 of Article IX of the Constitution, which provides that 'if the question submitted concerns the creation of any levy, debt or liability' the voter, in addition to possessing the general qualifications, 'must also be a taxpayer whose name appears upon the last preceding completed assessment roll,' in order to be entitled to vote thereon."

The provision in Section 7 of Chapter 249, Laws of 1947, re-

■ quiring the referendum to be submitted to the people and qualified electors must be read in the light of section 2 of Article IX of the Montana Constitution and must be read in connection with the statement in section 7 that it must be submitted "in accordance with the provisions of the constitution and the laws of the State of Montana relative thereto." The only electors qualified under the Constitution to vote upon this question were taxpayers whose names appeared on the last completed assessment roll. Pioneer Motors, Inc., v. State Highway Commission, supra.

The election clerks and judges acted properly in permitting only qualified taxpayers to vote upon the question.

However, the plaintiff singles out the statement in section 7 ■ of Chapter 249, Laws of 1947, that "there shall be a referendum on this act" and insists that not only the question of the creation of an indebtedness was submitted in the referendum but the entire Act was referred to the people. The title of the entire Act was printed on the official ballot. On this point the plaintiff relies on the case of Burgan and Walker, Inc., v. State Highway Comimssion, 114 Mont. 459, 137 Pac. (2d) 663, 669, to invalidate the bonds. In that case the legislature provided for highway anticipation debentures and requires that "this law" be "submitted to the people." This court held as we have above that if only the indebtedness feature were submitted, section 2 of Article IX, Montana Constitution, would control, but the court continued: "But since the entire Act is referred to the people (with the exception of the appropriation provision, which cannot constitutionally be referred, and the authorization of the election itself, which cannot logically be referred), it must, under section 1 of Article V of the Constitution, except as to the indebtedness feature, be referred to 'the legal voters,' which means that the legislature cannot impose other qualifications. State ex rel. Gleason v. Stewart, 57 Mont. 397, 188 Pac. 904.

"Thus we have an utterly inconsistent and irreconcilable situation,—an Act, for or against which all the legal voters are entitled to vote, except as to the indebtedness provision; and an

indebtedness provision, upon which only the legal voters who are also taxpayers may vote. There is no way of reconciling the inconsistency or of separating the two issues; the legislature has specified the contents of the ballot, with the only issue the approval of the Act.''

The case is readily distinguishable however, for on the ballot in the Burgan and Walker case, the voters were given the alternative to vote ''for the above entitled Act'' or ''against the above entitled Act.'' In the instant case the voters voted only ''for the bond issue, etc.'' or ''against the bonds issue, etc.'' The Act before the court in the Burgan and Walker case not only contained a submission of the question of authorization of the debt above the constitutional limit, but also provided for taxes on motor fuel, an appropriation of money (which the court concluded could not be referred to the people under the provisions of section 29, Article III, Montana Constitution), the form, conditions and payment of the proposed debenture bonds and the procedure for their issuance and other matters.

In the instant case the title of the Act on the ballot was explanatory of the purpose of the bond issue as required by the Constitution, section 2, Article XIII, but the only proposition submitted to the voters was whether they were for or against the bonds, i. e., the incurring of an indebtedness in excess of the constitutional limit.

There is no merit in any objections urged by the plaintiff. Accordingly the writ is denied.

Mr. Chief Justice Adair and Associate Justices Angstman, Freebourn and Bottomly, concur.