No 12244

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

STATE OF MONTANA, ex rel.,
THOMAS E McDONALD,

                                        Petitioner,

        -vs-

THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT OF THE
STATE OF MONTANA, in and for the County of Missoula, JUDGE
JACK L GREEN, presiding,

                                    Respondent.

ORIGINAL PROCEEDING:

Counsel of Record:

        For Petitioner:

                Edward A Cummings, argued, Missoula, Montana.

        For Respondent:

                Hon Robert L Woodahl, Attorney General, Helena,
                Montana.
                David V Gliko, Assistant Attorney General,
                Helena, Montana.
                Robert L Deschamps, III, County Attorney,
                Missoula, Montana.
                Michael G McLatchey, Deputy County Attorney,
                argued, Missoula, Montana.

Amicus Curiae

                David J Patterson, argued, Missoula, Montana.
                Barney Reagan, argued, Helena, Montana.

---

                        Submitted:  April 10, 1972

                         Decided:   APR 19 1972

Filed:  APR 19 1972

_Thomas J. Kearney_
                    Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

This is an original application for an appropriate extraordinary writ to determine the jurisdiction of a state district court over criminal proceedings against an Indian for alleged crimes committed on the Flathead Indian Reservation. The district court of Missoula County, the Honorable Jack L. Green, district judge, held that the district court had such criminal jurisdiction and denied defendant's motion to dismiss. Defendant now seeks review of the district court's ruling in the proceeding before us.

Thomas E. McDonald, relator here, and the defendant in the district court, is an enrolled member of the Confederated Salish and Kootenai Tribes of the Flathead Indian Reservation. On June 12, 1971 he was arrested at his home on the reservation and subsequently charged with three counts of criminal sale of dangerous drugs and one count of criminal possession of dangerous drugs. Each of the four alleged offenses is a felony under Montana's Dangerous Drug Act, sections 54-132, 54-133, R.C.M. 1947; and each was alleged to have been committed on that part of the Flathead Indian Reservation lying within Missoula County.

On July 12, 1971, McDonald filed a motion to dismiss the criminal action against him on the ground that the state courts of Montana do not have jurisdiction. Following hearing thereon, the district court of Missoula County denied defendant's motion to dismiss. On March 21, 1972 McDonald applied to this Court for an appropriate extraordinary writ to review the district court's ruling.

This court set the matter for adversary hearing on April 10, 1972 and invited briefs and oral argument from the United States district attorney, the area director of the Bureau of Indian Affairs, the superintendent of the Flathead Indian Reservation, as well as counsel for the respective parties. Subsequently leave was granted to file briefs and participate in oral argument as amicus curiae to Mr. Barney Reagan, director of Montana Legal Services, and to Mr. David J. Patterson, Montana Defender Project.

- 1 -

Briefs were filed and oral argument heard from Edward A. Cummings, attorney for McDonald; M. Gene McLatchy, deputy county attorney of Missoula County; David J. Patterson, amicus curiae; and Barney Reagan, amicus curiae. Additionally David Gliko appeared for the Montana attorney general, and documentary material was filed by James A. Canan, area director of the United States Bureau of Indian Affairs. Following hearing, the matter was taken under advisement by the Court.

The ultimate question before the Court in this proceeding is whether the state district court has jurisdiction of a criminal case charging a Flathead Indian with alleged crimes committed on the Flathead Indian Reservation. Two issues underlie this ultimate question:

(1)  Did Montana acquire jurisdiction over such criminal proceedings pursuant to legislative enactments by the United States Congress and the Montana legislature?

(2)  Did the Flathead Tribal Council subsequently revoke their consent to state jurisdiction?

The historical background to these legal issues is necessary as a preface to their determination. In 1889 when Montana was admitted to statehood, the Montana Constitution contained, among other things, two provisions pertinent to the present controversy. Ordinance I, Sec. 2 provided that all Indian lands "shall remain under the absolute jurisdiction and control of the Congress of the United States". Ordinance I, Sec. 6 provided "That the ordinances in this article shall be irrevocable without the consent of the United States and the people of the state of Montana."

In 1953 the Congress of the United States enacted Public Law 280 (Act of August 15, 1953, 67 Stat. 588, 590, 18 U.S.C., § 1162, 28 U.S.C., § 1360). Among other things, Public Law 280 provided a procedure whereby the state of Montana could acquire criminal jurisdiction over offenses committed by or against Indians on Indian Reservations within Montana. The consent of the United States to the assumption of such jurisdiction was granted by

- 2 -

Sec. 6 of Public Law 280, providing in pertinent part:

> "Notwithstanding the provision of any Enabling Act
> for the admission of a State, the consent of the
> United States is hereby given to the people of any
> State to amend, where necessary, their State Con-
> stitution or existing statutes, as the case may be,
> to remove any legal impediment to the assumption of
> * * * criminal jurisdiction in accordance with the
> provisions of this Act * * *."

Additionally, Sec. 7 of Public Law 280 provides in pertinent part:

> "The consent of the United States is hereby given,
> to any other State not having jurisdiction with
> respect to criminal offenses * * *, as provided for
> in this Act, to assume jurisdiction at such time
> and in such manner as the people of the State shall,
> by affirmative legislative action, obligate and bind
> the State to assumption thereof."

In 1963 the Montana legislature enacted Chapter 81, 1963 Session Laws (now codified as sections 83-801 through 83-806, R.C.M. 1947) relating to criminal offenses by Indians on the Flathead Indian Reservation. This legislation in substance obligates and binds the state of Montana to criminal jurisdiction over Indians on that portion of Indian country within the boundaries of the Flathead Indian Reservation in accordance with Public Law 280; describes the manner in which the state may assume criminal jurisdiction; provides for the assumption of such jurisdiction 60 days following the governor's proclamation; and permits the Indian Tribe to withdraw its consent to such jurisdiction within two years of the date of issuance of the governor's proclamation.

Tribal consent to the assumption of criminal jurisdiction by the state courts of Montana over Indians committing crimes on the Flathead Indian Reservation was granted by the enactment of Tribal Ordinance 40-A, dated May 16, 1964. The governor of Montana thereafter issued the required proclamation on June 30, 1964. Almost a year later on May 5, 1965 Tribal Ordinance 40-A (Revised) was enacted. This Ordinance was similar to the original Ordinance 40-A except for clarifying language limiting its scope to criminal laws and repealing the original Ordinance 40-A. The governor of Montana thereafter issued another proclamation accordingly dated October 8, 1965.

Several months later on June 22, 1966, Tribal Resolution 1973 was enacted expressly rescinding Tribal Ordinances 40-A and 40-A (Revised). There is no evidence that this Tribal Resolution was ever transmitted to or received by the governor of Montana; nor was any proclamation of the governor made in connection with this Resolution. On June 30, 1966 Tribal Resolution 1997 was enacted which expressly rescinded Tribal Resolution 1973 enacted eight days previously. Again no governor's proclamation was issued concerning Tribal Resolution 1997.

On September 15, 1967 Tribal Resolution 2318 was enacted requesting the governor of Montana to extend the time limit for withdrawal from state jurisdiction for an additional year after October 7, 1967, and withdrawing its consent to such state jurisdiction. It further provided that this Tribal Resolution was null and void if the governor extended such time limit as requested. On October 8, 1967 the governor issued a third proclamation extending the time limit for the Tribe's withdrawal of their consent to state jurisdiction for an additional year from October 7, 1967.

Finally, on April 30, 1971, the Tribal Council passed a motion "to seek retrocession on State Concurrent Jurisdiction". The record discloses no further action in conformity with this motion.

Additionally, we take judicial notice that the state of Montana has exercised criminal jurisdiction over Indians charged with committing crimes on the Flathead Indian Reservation for several years prior to the instant case. An unknown number of Indians have been tried, convicted, sentenced, imprisoned and fined for a variety of felonies and misdemeanors by state district courts and justice courts.

The foregoing state of affairs existed at the time relator McDonald was arrested and charged with four counts of violation of Montana's Dangerous Drug Act, all of which offenses were allegedly committed on the Flathead Indian Reservation.

Directing our attention to the first issue for review, relator contends that the state of Montana has never legally acquired jurisdiction

over criminal offenses committed by Indians on the Flathead Indian Reservation pursuant to United States Public Law 280. Relator argues that the provisions of Ordinance I, Sec. 2 of the Montana Constitution that all Indian lands "shall remain under the absolute jurisdiction and control of the congress of the United States" bars state criminal jurisdiction over crimes committed by Indians thereon until such time as this bar is removed by repeal or amendment of the Montana Constitution. According to relator, a constitutional amendment by popular vote is necessary under Public Law 280 requiring appropriate constitutional or statutory amendment by "the people of the State"; under Montana Constitution, Ordinance I, Sec. 6, requiring "the consent of * * * the people of the said state of Montana" to amendment of Ordinance I, Sec. 2, providing that all Indian lands "shall remain under the absolute jurisdiction and control of the congress of the United States"; under Montana Constitution, Art. III, Sec. 2, providing that "The people of the state have the sole and exclusive right * * * to alter and abolish their constitution * * *";and under Montana Constitution, Art. XIX, Sec. 9, requiring submission of constitutional amendments "to the qualified electors of the state for their approval or rejection" at an election following approval by 2/3 of each house of the legislature.

The foregoing contention is premised on the proposition that a constitutional amendment is required, and accordingly the "consent of the people of the state of Montana" cannot be granted by legislative enactment. But is a constitutional amendment required?

Ordinance I, Sec. 2 of the Montana Constitution simply provides that all Indian lands "shall remain under the absolute jurisdiction and control of the congress of the United States". This requirement was imposed by the United States upon the people of Montana as a precondition of statehood. Over 60 years later the United States Congress, in the exercise of its absolute jurisdiction and control over Indian lands, enacted Public Law 280 granting the state of Montana criminal jurisdiction over offenses committed by

Indians on Indian reservations upon amendment of its constitution or statutes, where necessary, to remove any legal impediment. Congress could at any time repeal Public Law 280 and terminate any jurisdiction of the state courts of Montana over crimes committed by Indians on Indian Reservations. Thus Indian lands "remain under the absolute jurisdiction and control of the congress of the United States" within the meaning of Montana Constitution, Ordinance I, Sec. 2. Accordingly, no constitutional amendment is necessary or required.

The necessity of amending a state constitution to remove any legal impediment to assumption of criminal jurisdiction in accordance with Public Law 280 is solely a matter of state law, and federal courts are bound by the state supreme court determination thereof. Quinault Tribe of Indians v. Gallagher, 368 F.2d 648, (CCA, 1966) Cert. den. 387 U.S. 907. The underlying concern of Congress in enacting Public Law 280 was not the manner in which the impediments are removed, but that such impediments be removed in a valid and binding manner under state law. Quinault, supra. Amendment of the state constitution is not required under Public Law 280. Quinault, supra.

The state of Washington, under like constitutional provisions as Montana's, has held that the "consent of the people" necessary to revoke Washington's constitutional requirement that Indian lands "shall remain under the absolute jurisdiction and control of the congress of the United States" may be accomplished by legislative enactment and does not require a vote of the people on a constitutional amendment. State v. Paul, 53 Wash.2d 789, 337 P.2d 33 (1959); Makah Indian Tribe v. State, 76 Wash.2d 485, 457 P.2d 590 (1969). While we recognize we are not bound by this determination and that "consent of the people" does not necessarily mean the same thing in Washington's constitution as it does in Montana's constitution, the reasoning in Paul and Makah is nonetheless persuasive.

The constitutional provisions and case authorities cited in the brief of amicus curiae to the contrary are not controlling where, as here,

- 6 -

we have held no constitutional amendment necessary. Montana Constitution, Art. III, Sec. 2; Art. XIX, Sec. 9, Art. III, Sec. 1; Jones v. Land Commissioners, 128 Mont. 462, 279 P.2d 393. Still remaining is a statute originally enacted in 1895 which was reenacted and is now codified as section 83-301, R.C.M. 1947, providing that the people, as a political body, consists of electors and citizens not electors. Fron this and miscellaneous constitutional provisions (Art. III; Art. V, Sec. 1; Art. VIII, Sec. 2) and cited cases (Pioneer Motors, Inc. v. High/Com., 118 Mont. 333, 165 P.2d 796; Thomas v. Bd. of Examiners, 122 Mont. 564, 207 P.2d 553; Cottingham v. State Bd. of Exam., 134 Mont. 1, 328 P.2d 907), it is argued that the state legislature is not the "people" whose consent is required to revoke Montana Constitution, Ordinance I, Sec. 2.

We cannot concur in this contention. In the first place, the consent of the people required for a constitutional amendment is not required under Montana Constitution, Ordinance I, Sec. 6 because a constitutional amendment is unnecessary. Secondly, the consent of the people of the state required by Public Law 280 does not require a constitutional amendment but simply requires removal of any impediment to state jurisdiction in some way that is valid and binding under state law. Quinault, supra. Finally, if the people as a political body consist of both (1) electors and (2) citizens who are not electors, how can the latter give their consent except through the representatives and senators from the district in which they reside in the state legislature? Accordingly we hold that Ch. 81, 1963 Session Laws, is a valid and binding consent of the people of Montana to criminal jurisdiction by state courts over Indians committing criminal offenses on the Flathead Indian Reservation pursuant to Public Law 280. We further hold that such state court criminal jurisdiction attached 60 days after the governor's proclamation, dated May 16, 1964, pursuant to Ch. 81, 1963 Session Laws.

Proceeding to the second issue, relator contends that the Flathead Tribal Council revoked their consent to such state criminal jurisdiction by

Tribal Resolution 1973, dated June 22, 1966, or Tribal Resolution 2318, dated September 15, 1967.

The privilege of withdrawal of such consent is not required under Public Law 280, but was gratuitously extended to the Flathead Tribe by the provisions of Ch. 81, 1963 Session Laws of the Montana legislature. It is exclusively governed by the provisions of such legislation, now codified as section 83-806, R.C.M. 1947, authorizing withdrawal of consent by the Tribe within two years after the state assumed jurisdiction.

Tribal Resolution 1973 of June 22, 1966 was ineffective and did not constitute a valid withdrawal of such consent. This Tribal Resolution was never transmitted to the governor nor was any gubernatorial proclamation ever issued concerning this Tribal Resolution. The superintendent of the Flathead Indian Reservation refused to approve it. The Tribal Council rescinded this Tribal Resolution eight days after its enactment. For those reasons we hold that this Tribal Resolution did not constitute a valid withdrawal of Tribal consent.

Tribal Resolution 2318 on September 15, 1967 was likewise ineffective to withdraw Tribal consent under section 83-806, R.C.M. 1947. It was enacted more than two years after the state assumed jurisdiction. The governor had no power or authority to extend the time limit for withdrawal of Tribal consent for an additional year under section 83-806, R.C.M. 1947 or otherwise. On September 15, 1967 state jurisdiction had been in effect for more than two years.

For the foregoing reasons we hold that the Flathead Tribal Council did not validly withdraw their consent to state criminal jurisdiction over Indians committing offenses on the Flathead Indian Reservation.

Accordingly, we hold that the district court of Missoula/has jurisdiction over criminal cause #3817 wherein Thomas E. McDonald is charged with four counts of violation of Montana's Dangerous Drug Act. This cause is remanded to the district court of Missoula County for further proceedings therein.

- 8 -

_____
Associate Justice

We concur:

_____
Chief Justice

_____

_____

_____
Associate Justice

- 9 -