**Patrick James CAMPBELL, Petitioner**

v.

**Roger W. CRIST, Warden of Montana State Prison, and Mike Greely, Montana State Attorney General, Respondents.**

**No. CV 80–2–M.**

United States District Court,
D. Montana,
Missoula Division.

June 26, 1980.

---

Patrick James Campbell, pro se.

Mark Murphy, Asst. Atty. Gen., Helena, for respondents.

## OPINION AND ORDER

RUSSELL E. SMITH, District Judge.

Petitioner was charged with armed robbery in Lake County, Montana. At the time of his arraignment, December 22, 1976, petitioner was represented by an attorney. At that time he was advised that the maximum penalty was 40 years, that he had the privilege against self-incrimination, and that he had a right to confront his accusors. Through his counsel he requested additional time to plead. On December 29, 1976, petitioner was again brought before the court, and at that time counsel indicated that the defense would be a mental disease or defect excluding criminal responsibility and requested a psychiatric evaluation. Over petitioner's denial of any intention of relying on such a defense, and over his opposition to the psychiatric evaluation on the ground that there was no need for it, the court ordered an evaluation. After the examination, and on March 2, 1977, petitioner was returned to court and entered a plea of guilty. The court sentenced petitioner to 10 years in the state prison and advised petitioner that if he voluntarily chose to enter the Galen Lighthouse Drug Treatment Center the court would withhold a commitment, and that if the petitioner successfully completed the Lighthouse program, which would take about a year, the court would seriously consider suspending the execution of the sentence. Petitioner agreed, and a formal judgment to that effect was entered. Petitioner was accepted by the Lighthouse Drug Treatment Center on March 8, 1977, and on June 21, 1977, he, with the consent of the Center, resigned from the program and returned to Lake County. He was brought before the court on his return. The court, through another judge, refused to commit the petitioner to the state prison, but by formal judgment, entered on July 25, 1977, suspended the 10-year sentence on the conditions, first, that petitioner be placed under the supervision of the Adult Parole and Probation Division, subject to all of the conditions and regulations of that agency, and, second, that he enroll as an out-patient in an alcoholic treatment program. The rules imposed by the probation department, of which petitioner was aware, required that petitioner obey the law and refrain from using any alcohol. On October 18, 1978, a petition to revoke the suspended sentence was filed charging that on June 8, 1978, petitioner was convicted of disorderly conduct, that on August 3, 1978, he was convicted of disorderly conduct, and that on October 6, 1978, he was convicted of interfering with a police officer. On November 3, 1978, while the petition for revocation was pending, petitioner pled guilty to the crime of using an automobile without the consent of the owner. This violation was charged in an amended petition for revocation. On January 3, 1979, petitioner was

again brought before the court. At this time he was represented by the public defender. Petitioner admitted entering guilty pleas to or being convicted of all of the misdemeanors charged. He was then given an opportunity to speak in his own behalf and, although he charged persecution on the part of the police officers, there was no challenge to the judgments of conviction, no denial of the facts underlying the convictions, and no explanation of the various guilty pleas and convictions. The court then, by formal judgment, revoked the suspension and committed the petitioner for 10 years, but suspended six of those years and designated the petitioner as a dangerous offender.

## JURISDICTION

Petitioner contests the jurisdiction of the state courts on the ground that he is an Indian and that for that reason the state courts do not have jurisdiction. This contention fails for two reasons:

■ First, petitioner has Indian blood but is not a member of the Confederated Salish and Kootenai Tribes (Tribes). His application for membership in the Tribes was denied by the Tribes. The action of the Tribes is final and is not reviewable by this court. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). If petitioner is not a member of the Tribes, then the fact that he has sufficient Indian blood to qualify would not deprive the state of jurisdiction. A state is deprived of jurisdiction not because of the race of an Indian but because it is thought that the exercise of jurisdiction by states would interfere with the quasi-sovereign status of the tribes. *Fisher v. District Court*, 424 U.S. 382, 96 S.Ct. 943, 47 L.Ed.2d 106 (1976). It follows that if petitioner is not a member of the Tribes the Tribes have no jurisdiction over him, and the action of the state in no way conflicts with the Tribes' power of self-government.

■ Second, the result would be the same if the petitioner were a member of the Tribes. Congress, by the Act of August 15, 1953, Pub.L. No. 280, § 7, 67 Stat. 590, granted to the states power to assume criminal jurisdiction on reservations "in such manner as the people of the State shall, by affirmative legislative action, obligate and bind the State to assumption thereof." The State of Montana by legislative act[1] provided a procedure for the assumption of such jurisdiction, and Montana did assume jurisdiction of crimes committed by and against Indians on the Flathead Reservation. The procedures for such assumption on the Flathead Reservation were attacked, and, in the case of *State ex rel. McDonald v. District Court*, 159 Mont. 156, 496 P.2d 78 (1972), the Montana Supreme Court held that the state had properly assumed jurisdiction. The question of whether the state procedures have been followed properly is a matter for the state court. *Quinault Tribe v. Gallagher*, 368 F.2d 648 (9th Cir. 1966), *cert. denied*, 387 U.S. 907, 87 S.Ct. 1684, 18 L.Ed.2d 626 (1967). Since the United States permitted assumption of jurisdiction by the state, and since the Supreme Court of Montana has held that jurisdiction was properly assumed, that ends the matter.

## DOUBLE JEOPARDY

■ Petitioner contends that he was placed in double jeopardy because the orders of March 2, 1977, July 20, 1977, and January 3, 1979, were all judgments of conviction for the offense of robbery. There was but one judgment of conviction and that occurred on March 2, 1977, following the plea of guilty. When petitioner failed to complete the Lighthouse program, he was brought before the court in accordance with the previous judgment. At that time, July 20, 1977, the court had power to order his commitment for 10 years, and certainly the court did not offend the double jeopardy provision of the fifth amendment to the United States Constitution by giving petitioner another chance, by placing him on probation and imposing conditions. The revocation of probation on January 3, 1979, was not a new conviction. It did no more

---

1. Montana Code Annotated § 2–1–302 (1979).

than enforce conditions of the initial judgment. Imposition of a prison sentence or revocation of probation does not offend the double jeopardy clause of the fifth amendment. *United States v. Clayton*, 588 F.2d 1288 (9th Cir. 1979).

## EFFECTIVE ASSISTANCE OF COUNSEL

■ Petitioner complains that he was denied the effective assistance of counsel at the revocation hearing and grounds this assertion in the failure of counsel to bring before the court his running dispute with his probation officer. Whether the probation officer was right or wrong,[2] is completely irrelevant to the question of whether petitioner had violated his probation.

## LACK OF NOTICE

■ As to the revocation proceedings themselves, petitioner claims that he did not receive a prior written notice of the proceeding of January 3, 1979, and that the entire evidentiary basis for said proceeding was withheld until May 1, 1979. The record shows that petitioner received a copy of the initial report of the probation officer recommending revocation. He appeared in court with counsel on December 20, 1978, for a hearing on a petition based on that initial report. While in open court counsel was given a copy of an amended petition for revocation which had attached to it the original report and a supplemental report. The supplemental report charged an additional conviction. Because of the amendment counsel obtained a postponement of the hearing and discussed the amended petition with petitioner. Apparently a copy was not left with him, but it was before him at the time of the subsequent hearing

2. The fact is that the probation officer, the counsellors, and the judges made every effort to save petitioner from himself.

3. The petition does not challenge the validity of the initial conviction. The court has examined the record of the proceedings leading to the initial conviction. The record of the initial conviction indicates that petitioner was advised of his rights. There was no factual basis for the acceptance of the plea shown by the record

on March 3, 1980. Particularly in view of the fact that petitioner admitted, without attempting to explain, his plea of guilty to the conviction shown in the supplemental petition, it is clear that he suffered no prejudice.

## OTHER ALLEGED CONSTITUTIONAL VIOLATIONS

The petitioner alleged:

E. Ground five: Conviction obtained by invalid guilty plea.[3] Supporting facts: In 1978 petitioner admitted guilt to elements of formal criminal charges without intentionally and knowingly waiving any specific rights except his right to trial by jury and at the proceeding for which sentence was imposed on January 3, 1979 petitioner admitted guilt to same elements of said formal criminal charges without intentionally and knowingly waiving any specific rights except his right to trial by jury.

In the trial of this case no effort was made to point out any infirmity in the misdemeanor convictions, no claim was made that the guilty pleas were inadvertently or mistakenly given and there was no intimation that petitioner was not guilty of the crimes charged.

Probation is granted as a privilege, and in a revocation proceeding the problem is "whether the court is satisfied that its action will subserve the ends of justice and the best interests of both the public and the defendant." *Burns v. United States*, 287 U.S. 216, 221, 53 S.Ct. 154, 156, 77 L.Ed. 266 (1932). *See Trueblood Longknife v. United States*, 381 F.2d 17, 20 (9th Cir. 1967).

prior to the acceptance of the plea as required by Fed.R.Crim.P. 11(f), but the court is satisfied from the whole record that the factual basis for such a plea did exist. The requirements of Rule 11(f) do not apply to pleas of guilty in state courts, and there was a voluntary plea which satisfied the requirements of the United States Constitution. *See Wilkins v. Erickson*, 505 F.2d 761 (9th Cir. 1974).

 One of the conditions of probation was that petitioner would obey the law. When he was convicted of four crimes it was hardly an abuse of discretion for the court to revoke probation. The judgments of conviction were in themselves proof that petitioner had violated the law. The judgments were presumed to be correct, and neither the revoking court nor this court is required to presume that there were some constitutional infirmities lurking somewhere in the proceedings leading to the convictions. The United States Supreme Court has said:

> A conviction after public trial in a state court by verdict or plea of guilty places the burden on the accused to allege and prove primary facts, not inferences, that show, notwithstanding the strong presumption of constitutional regularity in state judicial proceedings, that in his prosecution the state so departed from constitutional requirements as to justify a federal court's intervention to protect the rights of the accused.

*Darr v. Burford*, 339 U.S. 200, 218, 70 S.Ct. 587, 597, 94 L.Ed. 761 (1950). The Court of Appeals for the Ninth Circuit has said:

> We do not presume that the state courts commit errors, much less that they have deprived defendants appearing before them of their constitutional rights. The presumptions are the other way. *Sampsell v. People of State of California*, 9 Cir., 1951, 191 F.2d 721, 725; *Schlette v. People of State of California*, 9 Cir., 1960, 284 F.2d 827, 833–834.

*Herrera v. Wilson*, 364 F.2d 798, 800 n. 3 (1966). *See United States v. Marron*, 564 F.2d 867 (9th Cir. 1977); *United States v. Lustig*, 555 F.2d 751 (9th Cir. 1977); *Whitehead v. United States*, 155 F.2d 460 (6th Cir. 1946).

### INTERFERENCE WITH MAIL

Petitioner makes some claim of prison interference with his "legal mail." If there was such, it is irrelevant to the proceedings.

### EX POST FACTO LAWS

The judgment of January 3, 1979, designates petitioner as a "dangerous offender" under MCA § 46–18–404, which was enacted in 1977. Such designation has the effect of lengthening the minimum time to be served prior to parole. Since petitioner committed the crime prior to the enactment of the section, an ex post facto problem is posed. The court is now advised that the judgment has been amended to eliminate the designation as a dangerous offender, and hence the problem is moot.

IT IS THEREFORE ORDERED that the petition for a writ of habeas corpus be denied.