No. 97-510

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 59


STATE OF MONTANA,

Plaintiff and Respondent,

vs.


WAYNE SPOTTED BLANKET,

Defendant and Appellant.



APPEAL FROM:    District Court of the Twentieth Judicial District,
In and for the County of Lake,
The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Thomas S. Winsor, Michael Scott Winsor, Winsor Law
Firm, Helena,              Montana

For Respondent:

Joseph P. Mazurek, Attorney General, Jennifer M. Anders,
Assistant              Attorney General, Helena, Montana; Kim
Christopher, Lake County              Attorney, Polson, Montana



Submitted on Briefs: March 5, 1998

Decided: March 17, 1998
Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1    The youth, Wayne Spotted Blanket (Spotted Blanket), appeals from the District Court's May 15, 1997 order denying his motion to dismiss for lack of jurisdiction.  We affirm.

Background

¶2    On October 17, 1996, the Lake County Attorney filed an amended petition in Cause No. DJ-96-26, to initiate proceedings against Spotted Blanket under the Youth Court Act, § 41-5-501, MCA.  The petition alleged that Spotted Blanket, age 14, was a delinquent youth and a serious juvenile offender as set forth in §§ 41-5-103(7) and (24), MCA, in that he committed six felony offenses under state law in September and October 1996.  In Count I (aggravated burglary) and Count II (sexual intercourse without consent), it was alleged that on September 21 or 22, Spotted Blanket entered the home of Genevieve Morigeau and forcibly raped the babysitter, T.Z., at knife point while she was caring for two young children. In Count V (aggravated burglary) and Count VI (felony assault), Spotted Blanket was alleged to have entered the home of Dixie Miller on the night of October 2, 1996.  When Miller awoke and started to scream, Spotted Blanket choked her with a belt from her bathrobe.  He then left her residence when she continued to scream.  Count III (sexual intercourse without consent) alleged that on October 4, 1996, Spotted Blanket convinced M.E. to hide with him in the bushes in a Ronan city park. Spotted Blanket then choked and raped M.E.  In Count IV (sexual intercourse without consent), the State alleged that on October 5, 1996, Spotted Blanket forced M.E.'s sister, Ma.E., to engage in sexual intercourse at knife point.  According to the prosecutor's affidavit, Spotted Blanket admitted that he entered Morigeau's residence, attacked Miller and raped T.Z., M.E. and Ma.E.

¶3    Along with the petition, the State filed its motion to transfer the proceedings to the District Court under § 41-5-206, MCA.  The District Court heard this motion on October 23, 1996, and, following the hearing, ruled that Counts III and IV, only, would be transferred.  An information charging Spotted Blanket with these offenses was filed October 28, 1996, in Lake County Cause No. DC-96-112.  Thereafter Spotted Blanket retained counsel, Thomas S. Winsor, who presently represents him on appeal.

¶4    On February 24, 1997, the Lake County Attorney filed a new Youth Court petition addressing the charges which had not been transferred, Counts I, II, V and VI, and a motion to transfer these counts to District Court for prosecution.  On March 5, 1997, defense counsel, Spotted

Blanket and the State entered into a written stipulation agreeing as follows:

1.   That Counts I and II of DJ-97-06 [aggravated burglary of Genevieve Morigeau's residence and sexual intercourse without consent against T.Z., respectively] be transferred to District Court where Defendant is to be treated as an adult;

2.   That Counts I and II of DJ-97-06 be consolidated with the Counts in District Court case DC-96-112;

3.   That Counts III and IV [aggravated burglary and felony assault involving Dixie Miller] of DJ-97-06 remain in Youth Court;

4.   That as a result of this Stipulation no further hearings are necessary for the transfer and consolidation of Counts I and II of DJ-97-06 to DC-96-112;

5.   That the Youth Court hearing on the motion to transfer in DJ-97-06 scheduled for March 19, 1997 be vacated;

6.   That the hearing in DJ-97-06 for the youth's admission or denial on the petition presently scheduled for March 19, 1997 be rescheduled [sic] April 16, 1997;

7.   That Defendant be granted a continuance of the omnibus hearing in DC-96-112 to April 16, 1997; and,

8.   That Defendant waives his speedy trial rights as to this continuance in both actions.

¶5   On March 14, 1997, pursuant to this stipulation, the State filed an amended information in District Court charging Spotted Blanket with aggravated burglary of Genevieve Morigeau's residence (Count I) and with sexual intercourse without consent against T.Z. (Count II), M.E. (Count III) and Ma.E. (Count IV).  On May 16, 1997, Spotted Blanket, his counsel and the State executed a plea agreement and Spotted Blanket signed an acknowledgment of rights under which he agreed to enter Alford pleas to the charged offenses in exchange for the State's recommendation that he be committed to the Department of Corrections for 40 years on Count I and for 50 years on each of Counts II, III, and IV, with various conditions and with all commitments to run concurrently.  Following a hearing, the District Court accepted Spotted Blanket's pleas and on June 6, 1997, sentenced him within the parameters of the plea agreement to a total 50-year commitment with the Department of Corrections subject to a number of conditions.

¶6   Spotted Blanket filed his notice of appeal on June 16, 1997, from

"the Court's ruling of May 15, 1997 on his motion to dismis [sic] this matter."  Other matters pertaining to the background of this case will be discussed, to the extent necessary, in our opinion.

## Issues

¶7    On appeal, Spotted Blanket raises the following issues:

¶8    1.    Did the Youth Court err in transferring this case from the Youth Court to District Court?

¶9    2.    Did the Youth Court err in transferring Counts I and II to District Court without a finding of probable cause?

¶10   3.    Did the State courts have jurisdiction over Spotted Blanket, a juvenile member of the Confederated Salish and Kootenai Tribes?

## Discussion

### I.

¶11  In his first and second issues, Spotted Blanket contends that the District Court abused its discretion when it transferred his case from Youth Court to District Court because: (1) there was insufficient evidence that the juvenile facilities were inadequate as required by § 41-5-206(1)(d)(ii), MCA, and our decision in Matter of J.K.C. (1995), 270 Mont. 342, 891 P.2d 1169; and because (2) the court failed to make a finding of probable cause with respect to Counts I and II (aggravated burglary of Genevieve Morigeau's home and sexual intercourse without consent against T.Z.) as required by § 41-5-206(1)(d)(i), MCA.  We decline to address these issues and arguments for the following four reasons.

¶12  First, Spotted Blanket's notice of appeal was limited to the District Court's order denying his May 15, 1997 motion to dismiss for lack of jurisdiction.  This motion addressed and argued only the matter which Spotted Blanket now raises on appeal under his third issue, not the propriety of the transfer of his case from Youth Court to District Court. The record reflects that Spotted Blanket has not filed a notice of appeal from any order transferring his case from the Youth Court to the District Court.  Rule 4(c), M.R.App.P., requires that the notice of appeal "shall designate the judgment, order or part thereof appealed from."  We will not consider an appeal from an order not designated in the notice of appeal. See State v. Delap (1989), 237 Mont. 346, 350-51, 772 P.2d 1268, 1271.

¶13  Second, our review of the record on appeal indicates that Spotted Blanket never challenged the propriety of the transfer of his case from Youth Court to District Court on the grounds he now argues, nor did he reserve the right to appeal these issues pursuant to § 46-12-204(3), MCA, in the plea agreement or otherwise.  It is well settled that issues and claims of error not properly preserved in the trial court are barred from appellate review.  Section 46-20-701, MCA; State v. Swoboda (1996), 276 Mont. 479, 481, 918 P.2d 296, 298.  Moreover--and our cases are legion on this

point--we will not consider issues raised for the first time on appeal when the appellant had the opportunity to make his objections at the trial level. State v. Weeks (1995), 270 Mont. 63, 86, 891 P.2d 477, 491.

¶14 Third, Spotted Blanket and his counsel entered into a written stipulation with the State in which Spotted Blanket agreed that Counts I and II (aggravated burglary of Genevieve Morigeau's residence and sexual intercourse without consent against T.Z.) would be transferred to the District Court without further hearing. Accordingly, having agreed that no probable cause hearing would be necessary, Spotted Blanket is now in no position to argue that the District Court erred in failing to enter a probable cause finding. See Topco, Inc. v. State (1996), 275 Mont. 352, 358, 912 P.2d 805, 808 ("it is improper to raise an issue on appeal as to a question of law or fact after the parties have entered into a stipulation as to that law or fact") (citations omitted).

¶15 Finally, Spotted Blanket entered a plea of guilty to the four felony counts set out in the amended information. It is well settled that a plea of guilty which is voluntary and understandingly made (and there is no argument, here, to the contrary) constitutes a waiver of nonjurisdictional defects and defenses, including claims of constitutional violations which occurred prior to the plea. Stilson v. State (1996), 278 Mont. 20, 22, 924 P.2d 238, 239 (citations omitted). The fact that Spotted Blanket's was an Alford plea does not change this principle of law. See State v. Butler (1995), 272 Mont. 286, 291, 900 P.2d 908, 911.

¶16 Accordingly, for the foregoing reasons, we hold that Spotted Blanket has waived appellate review of his first and second issues.

II.

¶17 Did the State courts have jurisdiction over Spotted Blanket, a juvenile member of the Confederated Salish and Kootenai Tribes?

¶18 Spotted Blanket argues that the State courts did not have jurisdiction over this matter because he is a member of the Confederated Salish and Kootenai Tribes (Tribes) and because his offenses were committed within the exterior boundaries of the Flathead Reservation against Tribal members while he was a juvenile. As pointed out above, Spotted Blanket raised this issue in the District Court by motion to dismiss, and the court denied his motion. The question of whether a motion to dismiss is properly granted or denied on the basis of a lack of subject matter jurisdiction is one of law which we review de novo. See Poteat v. St. Paul Mercury Ins. Co. (1996), 277 Mont. 117, 119, 918 P.2d 677, 679 (citations omitted). In the case at bar, we hold that the State Youth Court and District Court did properly exercise subject matter jurisdiction over this case.

¶19 Public Law 280, enacted by Congress in 1953, among other things, authorized the State to acquire criminal jurisdiction over offenses committed by or against Indians on Indian reservations within the State.

See State ex rel. McDonald v. District Court of Fourth Judicial District (1972), 159 Mont. 156, 159, 496 P.2d 78, 80.  In 1963, the Montana Legislature enacted Ch. 81, L. 1963 which, in substance, obligated and bound the State of Montana to criminal jurisdiction over Indians on the Flathead Reservation. Tribal consent to this assumption of jurisdiction required by subsequent amendments to P.L. 280) was granted by the enactment of Tribal Ordinance 40-A, dated May 16, 1964, and the governor of Montana thereafter issued the required proclamation on June 30, 1964. Almost a year later on May 5, 1965, Tribal Ordinance 40-A (Revised) was enacted clarifying language in the original ordinance limiting its scope to criminal laws and repealing the original Ordinance 40-A.  Thereafter, the governor issued another proclamation dated October 8, 1965.  McDonald, 159 Mont. at 160-61, 496 P.2d at 80.  This Court has long recognized that the State of Montana has exercised criminal jurisdiction over Indians committing crimes on the Flathead Indian Reservation.  McDonald, 159 Mont. at 161, 496 P.2d at 81.  See also Campbell v. Crist (D.Mont. 1980), 491 F.Supp. 586, 588.

¶20  Spotted Blanket argues, however, that because P.L. 280 makes no specific mention of juveniles, he is not subject to State court jurisdiction and that the State's exercise of jurisdiction over juveniles is contrary to notions of tribal sovereignty and the Flathead policy of rehabilitation.  We disagree.

¶21  At the outset, and while not dispositive one way or the other of the jurisdictional issue raised here, we note that this case was investigated by both Tribal and State law enforcement and that Spotted Blanket was ultimately prosecuted in State court with the knowledge, concurrence and cooperation of the Tribal authorities.  In point of fact, the record indicates that the Tribal prosecutor and Tribal juvenile officer jointly made the referral of Spotted Blanket's case to the State--a decision that, according to the Chief Judge of the Tribal Court, was clearly within their power and discretion.

¶22  More importantly, the United States Supreme Court has addressed and decided the jurisdictional issue raised by Spotted Blanket contrary to his position.  In Washington v. Confederated Bands and Tribes of the Yakima Indian Nation (1979), 439 U.S. 463, 99 S.Ct. 740, 58 L.Ed.2d 740, the Court approved the State of Washington's partial assumption of jurisdiction over the defendant Yakima Indian Tribes under P.L. 280 with regard to various jurisdictional categories, including "juvenile delinquency." Washington, 439 U.S. at 465-66 n. 1, 475-76, 499, 99 S.Ct. at 744 n. 1, 748-49, 760, 58 L.Ed.2d at 747 n. 1, 752-53, 767.  In doing so the Court noted that Washington had done no more than "refrain from exercising the full measure of allowable jurisdiction without the consent of the tribe affected."  Washington, 439 U.S. at 495, 99 S.Ct. at 758, 58 L.Ed.2d at 764. Moreover, the Court stated:
    We are unable to conclude that the State, in asserting a less

intrusive presence on the Reservation while at the same time obligating itself to assume full jurisdictional responsibility upon request, somehow flouted the will of Congress. A State that has accepted the jurisdictional offer in Pub.L. 280 in a way that leaves substantial play for tribal self-government, under a voluntary system of partial jurisdiction that reflects a responsible attempt to accommodate the needs of both Indians and non-Indians within a reservation, has plainly taken action within the terms of the offer made by Congress to the States in 1953.

Washington, 439 U.S. at 499, 99 S.Ct. at 760, 58 L.Ed.2d at 767.

¶23  This is, of course, precisely what Montana has done on the Flathead Reservation. See  Ch. 81, L. 1963 (codified at  §§ 2-1-301, -302 and -303, MCA).  Furthermore, as previously noted, the Tribes' Ordinance 40-A (Revised) extended concurrent jurisdiction to the State over certain specific areas, including "Juvenile Delinquency and Youth Rehabilitation" and "All Criminal Laws of the State of Montana . . . ."  See Liberty v. Jones (1989), 240 Mont. 16, 18, 782 P.2d 369, 371; Larrivee v. Morigeau (1979), 184 Mont. 187, 193-94, 602 P.2d 563, 566-67, cert. denied, 455 U.S. 964 (1980).

¶24  In 1993, the Montana Legislature adopted a statute that allowed the Tribes to withdraw their consent to exercise of State criminal misdemeanor and civil jurisdiction.  Section 1, Ch. 542, L. 1993 (codified at § 2-1-306, MCA).  The Tribes sought withdrawal of most forms of criminal misdemeanor jurisdiction in Resolution 94-123, and the requested retrocession became effective in September 1994, with the governor's proclamation of September 30, 1994.  Notwithstanding, the State's jurisdiction over felonies and civil matters within the scope of Ordinance 40-A (Revised) was otherwise unaffected.  Accordingly, Montana retains concurrent jurisdiction with the Tribes over juvenile delinquency and criminal felony matters.

¶25  Spotted Blanket's argument that lack of any specific mention of "juveniles" or "juvenile jurisdiction" in P.L. 280 precludes the assertion of jurisdiction by the State over these matters is without merit.  Congress did not specify any particular sorts of jurisdictional categories within the law's jurisdictional offer.  Rather, P.L. 280 included all criminal offenses and civil causes of action within its provisions.  See Washington, 439 U.S. at 471-74 n. 9, 99 S.Ct. at 746-48 n. 9, 58 L.Ed.2d at 750-51 n. 9.

¶26  We hold that Spotted Blanket is properly subject to the jurisdiction of the courts of  Montana under the provisions of P.L. 280.

¶27  Affirmed.

/S/   JAMES C. NELSON


We Concur:

/S/   J. A.  TURNAGE
/S/   KARLA M. GRAY
/S/   WILLIAM E. HUNT, SR.
/S/   JIM REGNIER