No. 01-131

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 237

STATE OF MONTANA,

        Plaintiff and Respondent,

  v.

BRIAN GRAHAM,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin,
Honorable Mike Salvagni, Judge Presiding

COUNSEL OF RECORD:

      For Appellant:

           Chad Wright, Appellate Defender, Helena, Montana

      For Respondent:

           Honorable Mike McGrath, Attorney General; Mark W. Mattioli,
Assistant Attorney General, Helena, Montana

           Marty Lambert, County Attorney; Rob Brown, Deputy County Attorney,
Bozeman, Montana

                    Submitted on Briefs:   April 11, 2002

                             Decided:   October 24, 2002

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    Brian Graham (Graham), by counsel, appeals from the District Court's order denying his request for postconviction relief. The sole issue which we consider is whether the District Court properly denied postconviction relief. We hold that the trial court did not abuse its discretion in denying Graham's request for postconviction relief. Accordingly, we affirm.

<u>Background</u>

¶2    On February 16, 1997, the Price Rite drug store in Bozeman, Montana, was burglarized. Approximately $2,800 of prescription drugs and $650 in cash were stolen. Three days later, Missouri Headwater Drug Task Force investigators went to the residence of Graham's girlfriend, Andrea Lutes (Lutes), regarding an unrelated drug investigation. Lutes indicated that she had possible information about the Price Rite burglary. Lutes agreed to go to the Law and Justice Center with the investigators where she was interviewed.

¶3    Based on Lutes' information, investigators obtained a search warrant for the residence of Kristofer May (May), a former Price Rite employee. Graham had just moved into May's trailer before the burglary. During the search police found various drugs and bundles of cash hidden in May's trailer. In the area where Graham had slept, police found a needle and a tubex of either morphine or Demerol. Except for the tubex, all the other drugs were found in May's room.

¶4    Shortly thereafter, Graham and May were charged by information with the same three counts: Count I "Burglary," Count II "Theft,"

and Count III "Criminal Possession of Dangerous Drugs." The information specifically listed the four dangerous drugs that police had found in the trailer: morphine, Demerol, Methadone and Ritalin. In April 1997, May entered into a Cooperation and Plea Agreement with the Gallatin County Attorney's Office. As part of the agreement, May was required to give information about Graham's involvement in the burglary. Ultimately, May received a deferred sentence of six years for each count.

¶5 Graham, who initially pled not guilty to all three counts, entered into a plea agreement with the State. The agreement stipulated that Graham would plead guilty to Count III, "Criminal Possession of Dangerous Drugs," in exchange for the dismissal of the burglary and theft charges. Graham entered a plea of guilty to the charge of criminal possession of dangerous drugs in June 1997.

¶6 During his guilty plea colloquy the court and Graham had the following exchange:

> THE COURT: I'll ask you, Mr. Graham, if you would tell me in your own words what you did that causes you to plead guilty to the criminal possession of dangerous drugs . . . .
>
> GRAHAM: I accepted a two tube of some liquid drugs of some type-I'm not exactly sure-along with a syringe from Kristofer May, and it was in my possession at the time that the police came to and did a search on the house. It was in my room. It wasn't on my personal possession.
>
> THE COURT: Why do you say you don't know what it was?
>
> GRAHAM: It was a liquid of some type, a liquid drug like that Kristofer May gave me.
>
> THE COURT: Was it water?

3

GRAHAM: I'm not sure if it was Demerol or morphine or something like that.

THE COURT: Did he tell you what it was?

GRAHAM: No, not exactly. I knew it was either morphine or Demerol or one of the three he had.

THE COURT: So you knew that you were possessing an illegal drug?

GRAHAM: Yes, I did.

Following his plea, Graham received the maximum sentence of five years with no time suspended.

¶7 Almost two years after his guilty plea, Graham filed a *pro se* petition for postconviction relief. Graham now contends that at the time he pled guilty to the possession of dangerous drugs, he believed he was pleading guilty to possession of only two drugs, Demerol and morphine, and not to possession of all four drugs listed in the information. Therefore, he asserts that he is actually innocent of possessing the four drugs listed in the information. He also argues that he received ineffective assistance of counsel and that if his counsel had advised him that he was pleading guilty to possession of all four drugs, he never would have pled guilty to the charge. Lastly, Graham contends that his guilty plea was neither knowing nor voluntary and that he should be allowed to withdraw his guilty plea.

¶8 In an order dated September 21, 1999, the District Court concluded that although Graham's petition for postconviction relief was not filed within one year of his conviction, the issues raised by the petition were significant and should be disposed of on the merits. Following an October 2000 evidentiary hearing, the

District Court denied Graham's petition for postconviction relief. This appeal follows. We conclude that the District Court's decision was correct and, therefore, must be affirmed.

¶9    The issue presented on appeal is as follows:

Did the District Court properly deny postconviction relief?

<u>Standard of Review</u>

¶10   We review the denial of a petition for postconviction relief to determine whether the trial court's findings of fact are clearly erroneous and whether its conclusions of law are correct. Discretionary rulings in postconviction relief proceedings, including rulings relating to whether to hold an evidentiary hearing, are reviewed for abuse of discretion. *Mallak v. State*, 2002 MT 35, ¶12, 308 Mont. 314, ¶12, 42 P.3d 794, ¶12; *State v. Hanson*, 1999 MT 226, ¶ 9, 296 Mont. 82, ¶ 9, 988 P.2d 299, ¶ 9.

<u>Discussion</u>

¶11 With respect to postconviction proceedings, the Legislature has set forth a specific statute of limitations requiring that a petition for postconviction relief be filed within one year of the date of conviction. Section 46-21-102, MCA (1997). At the outset, while this Court has held that the statutory time-bar may be waived when there is a clear miscarriage of justice, this exception does not apply unless the petitioner provides newly discovered evidence that demonstrates his actual innocence. *State v. Placzkiewicz*, 2001 MT 254, ¶ 12, 307 Mont. 189, ¶ 12, 36 P.3d 934, ¶ 12; *State v. Redcrow*, 1999 MT 95, ¶¶ 33-34, 37, 294 Mont. 252, ¶¶ 33-34, 37, 980 P.2d 622, ¶¶ 33-34, 37.

5

¶12 For a petitioner to prove actual innocence he must do more than show that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty. *Redcrow*, ¶ 33 (citing *Schlup v. Delo* (1995), 513 U.S. 298, 329, 115 S.Ct. 851, 868, 130 L.Ed.2d 808, 837). Because a petitioner must demonstrate that no reasonable juror would have found him or her guilty, the fundamental miscarriage of justice exception is extremely rare and limited to extraordinary cases. *Redcrow*, ¶ 33 (citing *Schlup*, 513 U.S. at 324, 115 S.Ct. at 865-66, 130 L.Ed.2d at 834).

¶13 In the present matter, Graham maintains that he is actually innocent of possessing dangerous drugs because he is innocent of possessing two of the four drugs listed in the charging information. Graham contends that no reasonable juror would have found him guilty of Count III because the State could not have proven that he had possessed each of the four drugs beyond a reasonable doubt. However, this claim that the State could not have successfully convicted him is unconvincing. It is well settled that a plea of guilty which is knowing and voluntary constitutes a waiver of nonjurisdictional defects and defenses. *State v. Spotted Blanket*, 1998 MT 59, ¶ 15, 288 Mont. 126, ¶ 15, 955 P.2d 1347, ¶ 15; *Stilson v. State* (1996), 278 Mont. 20, 22, 924 P.2d 238, 239. Unless the State is put to the test of presenting its case at trial, we have no way of knowing what the State's proof would be. When a defendant enters a plea of guilty, he waives his right to a jury trial and, in doing so, waives the requirement that the State prove each element of the crime beyond a reasonable

doubt. Graham was convicted and sentenced pursuant to his plea, not upon the presentation of any evidence. The allegation that the State could not have proven each element, chiefly that Graham had possessed each of the four drugs, is mere speculation.

¶14 Graham has not demonstrated a clear miscarriage of justice. In order to convince the Court of his actual innocence of possessing dangerous drugs, Graham must offer newly discovered evidence that he is innocent of possessing all four drugs. This he has not done. His own exculpatory statements do not qualify as newly discovered evidence and are not sufficient to establish his actual innocence. As stated above, a fundamental miscarriage of justice arises only when a jury could find, in light of new evidence, that the defendant is actually innocent of the crime. Graham's admission of possessing morphine or Demerol, and the absence of new evidence to the contrary, eliminate that possibility in this case.

¶15 Neither does Graham's allegation that he received ineffective counsel qualify as new evidence that he is actually innocent. As we held in *Beach v. Day* (1996), 275 Mont. 370, 374, 913 P.2d 622, 624, because all of Graham's claims regarding ineffective assistance of counsel are record-based, they do not constitute new evidence and could have been presented prior to the expiration of the one-year statute of limitations. Accordingly, the District Court was correct in holding that Graham did not establish actual innocence entitling him to postconviction relief.

¶16 Alternatively, Graham alleges that he should be allowed to withdraw his guilty plea because it was not a knowing and voluntary plea. Section 46-16-105, MCA (1997), provides that "[a]t any time before or after a judgment, the court may, for good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted." This Court has established three factors to be considered when determining whether "good cause" under § 46-16-105, MCA (1997), exists to permit the withdrawal of a guilty plea:

> a. the adequacy of the district court's interrogation as to the defendant's understanding of his plea;
> b. the promptness of the motion to withdraw the prior plea; and
> c. the fact that the defendant's plea was apparently the result of a plea bargain in which the guilty plea was given in exchange for dismissal of another charge.

*Mallak v. State*, 2002 MT 35, ¶ 17, 308 Mont. 314, ¶ 17, 42 P.3d 794, ¶ 17; *State v. Knox*, 2001 MT 232, ¶ 11, 307 Mont. 1, ¶ 11, 36 P.3d 383, ¶ 11; *State v. Bowley* (1997), 282 Mont. 298, 304, 938 P.2d 592, 595.

¶17 We apply the three factors in this case to determine whether good cause exists that would permit Graham to withdraw his guilty plea. We first look to the District Court's interrogation of Graham at the time of his plea. At the time of his plea, the Court directly asked Graham whether or not he knew he had possessed either Demerol or morphine, both "dangerous" drugs, and Graham responded in the affirmative. Unlike the defendant in *Mallak* (an Iraqi immigrant with an English vocabulary of a four year-old and an IQ of 65), Graham has full command of the English language and

8

does not argue that he did not understand the court's question. We find that the District Court's interrogation of Graham was adequate.

¶18 The second factor we consider is whether the defendant's application for withdrawal of his plea occurred within a reasonable period of time. While § 46-16-105, MCA (1997), permits the withdrawal of a guilty plea "any time before or after a judgment," we have declined to adopt specific parameters defining the timeliness of a motion to withdraw because each case presents unique factual circumstances. *State v. Enoch* (1994), 269 Mont. 8, 12, 887 P.2d 175, 178. As a general rule, however, a motion to withdraw a guilty plea filed over a year after entry of the plea is untimely. *State v. Osterloth*, 2000 MT 129, ¶ 24, 299 Mont. 517, ¶ 24, 1 P.3d 946, ¶ 24; *State v. Reynolds* (1992), 253 Mont. 386, 391, 833 P.2d 153, 156. This one-year limit is not a hard and fast rule, but rather a general guideline, and one for which exceptions will be made in exceptional circumstances. For example, in *Mallak*, the belated consequences of the defendant's plea (deportation and possible execution upon his return to Iraq) were not realized until almost a decade after his plea. Here, while Graham is only one year outside of the one-year limit, no exceptional circumstances exist that warrant the Court's exception to the rule. Because Graham did not file within the year, we find that his application for withdrawal of his plea did not occur within a reasonable period of time.

¶19 The last factor that we consider is whether Graham received a benefit in exchange for his plea agreement. Graham was charged with three counts. In exchange for pleading to the drug charge, the State dismissed the burglary and theft charges. Undeniably, Graham received a considerable benefit in having the two charges dismissed. For Graham now to argue that the reduction in charges cannot be considered a benefit because the State would not have successfully convicted him is, again, nothing more than speculation on Graham's part.

¶20 After considering the three factors, this Court concludes that Graham's plea of guilty was knowing and voluntary; therefore, Graham does not meet the good cause requirement which would allow him to withdraw his plea. Therefore, we hold that the District Court was correct in denying Graham's request to withdraw his guilty plea.

¶21 Accordingly, we affirm the District Court's ruling to deny postconviction relief.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ JIM REGNIER