No. 86-289

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

LEWIS & CLARK COUNTY,

Plaintiff and Respondent,

-vs-

STATE OF MONTANA, DEPARTMENT OF
COMMERCE and STATE OF MONTANA,
DEPARTMENT OF REVENUE,

Defendants and Appellants.

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Robert Holter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

R. Bruce McGinnis, Dept. of Revenue, Helena, Montana
Richard M. Weddle, Dept. of Commerce, Helena, Montana

For Respondent:

Mike McGrath, County Attorney, Helena, Montana

Submitted on Briefs: Sept. 18, 1986

Decided: December 10, 1986

Filed: DEC 10 1986

_Ethel M. Harrison_

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

The Department of Commerce and Department of Revenue appeal a Lewis and Clark County District Court judgment in favor of Lewis and Clark County.

Two issues are presented on appeal:

(1) Whether the District Court erred in determining that under § 61-3-536, MCA, the State must reimburse the County for revenue lost by the County's erroneous calculation under the statute?

(2) Whether the District Court erred in granting the County's request for a declaratory judgment?

We affirm.

In 1981, the Montana Legislature changed the law for taxing automobiles and light trucks from a property tax system to a flat fee system. The fees to be paid upon each licensed vehicle did not equal the amount of revenue previously raised by the property tax. The legislature appropriated $3,000,000 from the general fund to make up for this shortfall. In essence, the State was agreeing to reimburse the county governments on a dollar for dollar basis for revenues lost by repeal of the property tax system. In 1983, the legislature transferred the method of funding the reimbursement to the local government unit by creating the Local Government Block Grant Program. The legislature appropriated $3,000,000 from the general fund and earmarked one-third of the oil severance tax for the program.

The formula for reimbursing the counties was codified into § 61-3-536, MCA, which reads as follows:

61-3-536.  State aid for local government.  (1) Each county treasurer shall compute:

(a) the total amount received during the period from January 1, 1981, to December 31, 1981, for property taxes on automobiles and trucks having a rated capacity of three-quarters of a ton or less, denoted CT;

(b) the total amount that would have been received during the same period if the license fee system, excluding the block grant fee allocated to local governments under 61-3-509(3), had been in effect, denoted CF; and

(c) the number of light vehicles registered in the county on December 31, 1981, denoted NC.

(2) The three quantities, CT, CF, and NC, shall be certified to the department of revenue by February 1, 1982.  The department shall compute for each county a quantity called county revenue loss, denoted CRL, and county loss per vehicle, denoted CLV, and defined as follows:

(a) CRL = larger of:

(i) 0; or

(ii) CT - CF;

(b) CLV = CRL/NC.

(3) In order to be eligible for reimbursement payment, a light vehicle must be such that it would have been subject to ad valorem tax if it had been registered prior to January 1, 1982.

(4) Prior to February 1 of year denoted Y, the county treasurer shall determine and certify to the department the number of eligible light vehicles registered in the county on December 31 of the prior year, denoted NC(Y).  Prior to March 1 of year Y, the department of revenue shall transmit to the department of commerce the amount of CLV x NC(Y) for each county.

> (5)  On March 1 of year Y, the department of commerce shall transmit to each county treasurer a warrant in the amount of CLV x NC(Y).
>
> (6)  Upon receipt of the payment provided for in subsection (5), the county treasurer shall credit the payment to a motor vehicle suspense fund and, at some time between March 15 and March 30, shall distribute the payment in the same manner as funds are distributed to the taxing jurisdictions as provided in 61-3-509.

The counties were responsible for three figures: (1) the amount of money received by the county from the property tax on automobiles and light trucks in 1981; (2) the amount of money the county would have collected had the fee system been in effect in 1981; and (3) the number of registered automobiles and light trucks in 1981. The three figures were then certified to the Department of Revenue which arrived at the loss per vehicle by plugging the figures into the formula described in the statute. The loss per vehicle figure would remain constant; in future years the counties were only required to submit the number of registered vehicles to the State to become eligible for reimbursement.

The Lewis and Clark County Treasurer, pursuant to subsection (1)(b) of § 61-3-536, MCA, miscalculated the amount the County would have received in 1981 if the fee system had been in effect at that time. The Treasurer estimated that the County would have received $1,827,219 under the fee system in 1981, rather than $1,370,988, the correct figure. Because the County submitted an incorrect figure, the loss per vehicle figure calculated by the State came to $30.21, instead of the accurate result of $39.91. The County discovered its mistake in 1983 and certified the

4

correct figure to the State. The State refused to allow the County to submit the new figure, arguing that under § 61-3-536 it could not authorize a change in the figures. The County filed suit on January 22, 1985, claiming damages of $1,016,957 for the years 1982 and 1983. It alleges in its brief that when the shortfalls of 1984 and 1985 are included, it has been damaged to the amount of $1,814,821.50

The District Court entered judgment in favor of the County for $1,016,957 and declared the loss per vehicle figure for Lewis and Clark County to be $39.91.

The standard of review was stated in Lima School Dist. No. 12 v. Simonsen (Mont. 1984), 683 P.2d 471, 476, 41 St.Rep. 944, 950:

> In reviewing findings of fact in a civil action tried without a jury, this Court may not substitute its judgment in place of the trier of facts. Our function is confined to determining whether there is substantial credible evidence to support the court's findings. We view the evidence "in a light most favorable to the prevailing party, recognizing that substantial evidence may be weak or conflicting with other evidence yet still support the findings." Lacey v. Herndon (Mont. 1983), 668 P.2d 251, 255, 40 St.Rep. 1375, 1380.

The judicial function in construing and applying statutes is to effect the intention of the legislature. In determining legislative intent, the Court looks first to the plain meaning of the words used in the statute. If intent cannot be determined from the context of the statute, we examine the legislative history. Thiel v. Taurus Drilling Ltd. 1980-II (Mont. 1985), 710 P.2d 33, 35, 42 St.Rep. 1520, 1522; Dorn v. Bd of Trust. of Billings Sch. Dist. (Mont.

1983), 661 P.2d 426, 430, 40 St.Rep. 348, 352. It is a further fundamental rule of statutory construction that the unreasonableness of the result produced by one interpretation is reason for rejecting it in favor of another that would produce a reasonable result. Johnson v. Marias River Elec. Co-Op., Inc. (Mont. 1984), 687 P.2d 668, 671, 41 St.Rep. 1528, 1532.

Upon review of the statute in question, we are unable to ascertain a definitive legislative intent. Therefore an examination of the legislative history will be necessary. The statement of intent to § 61-3-536, MCA, provides in pertinent part:

> It is the purpose of this act to replace the present property tax on automobiles and light trucks (3/4 ton capacity or less) by a license fee based on the age and weight of the vehicle. It is intended that this system commence with registration of vehicles on January 1, 1982.
>
> . . .
>
> The financial aid provisions of the bill are designed to provide a mechanism to give financial relief to local governments due to the loss of revenue from automobile and light truck property tax.

In addition, the minutes of the February 16, 1981, meeting of the Senate Taxation Committee reflect a legislative intent to reimburse the counties "dollar for dollar for what they lose" by repeal of the property tax system. (Taxation Committee, Montana State Senate, February 16, 1981, at 2.) The minutes of the April 9, 1981 meeting of the House Taxation Committee express a similar intent. In that meeting, Terry Cohea, the management and budget analyst,

6

commented that "the point of the bill was to reimburse local governments for every dollar they would lose" by the change to a flat fee system. (Taxation Committee, Montana State House, April 9, 1981, at 11-12.) This implies that accurate figures would be certified to the State and would become part of the fixed formula to be used in all succeeding years to determine the amount of reimbursement for a particular county. One can imagine the economic consequences to a county submitting inaccurate figures to the State. In this case, the loss per vehicle figure was off by $9.70 in favor of the State. When that figure was used in the statutory formula the County realized a significant revenue loss for the year 1982. Since then the County's revenue loss has increased by $9.70 for every additional vehicle registered in the County.

A statute will not be interpreted to defeat its evident object or purpose; the objects sought to be achieved by the legislation are prime consideration in interpreting statutes. Montana Wildlife Federation v. Sager (Mont. 1980), 620 P.2d 1189, 1199, 37 St.Rep. 1897, 1907.

From our reading of the legislative history of § 61-3-536, MCA, it is clear that the law was intended as a tax relief measure for owners of automobiles and light trucks and that the counties were not supposed to lose any revenue from implementation of the law. The predicament in which the County now finds itself was not envisioned; to leave the situation as it stands would defeat the obvious purpose of § 61-3-536, MCA.

7

The State argues that under § 61-3-536 it need only receive the data certified to it as being correct and manipulate that data to come up with a reimbursement figure, believing that it is powerless to authorize any corrections to the certified figures. In answering this argument, we refer to Bay v. State, Dept. of Admin. (Mont. 1984), 688 P.2d 1, 4, 41 St.Rep. 1725, 1729:

> [A]lthough we give deference to the interpretation given a statute by the officers or agency charged with its administration, Dept. of Rev. v. Puget Sound Power and Light Company (1978), 179 Mont. 255, 587 P.2d 1282, this does not mean that courts must rubberstamp any interpretation the agencies may give a statute.

We conclude that there is substantial credible evidence to support the lower court's findings. The District Court did not err in determining that under § 61-3-536, MCA, the State must reimburse the County for revenue lost by the County's erroneous calculation under the statute.

As to whether the District Court erred in granting the County's request for a declaratory judgment, a discussion of the Uniform Declaratory Judgments Act is appropriate. Section 27-8-102, MCA, delineates the purpose and object of a declaratory judgment:

> This chapter is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered.

Section 27-8-202 provides as follows:

> Any person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are

affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

The County had the right to have the District Court construe § 61-3-536, MCA, and thereby determine the correct loss per vehicle figure to be used by the State. The lower court ruled that the correct loss per vehicle was $39.91.

The judgment of $1,016,957 and the determination of the correct loss per vehicle figure of $39.91 is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

9