FILED

12/03/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0689

DA 23-0689

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 284

LAKE COUNTY,

       Plaintiff and Appellant,

  v.

STATE OF MONTANA,

       Defendant and Appellee.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DV-22-117
Honorable Amy Eddy, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

       Robert T. Bell, Lance P. Jasper, Reep, Bell, & Jasper, P.C., Missoula,
       Montana

       For Appellee:

       Dale Schowengerdt, Timothy Longfeld, Landmark Law, PLLC, Helena,
       Montana

       Leonard H. Smith, Crowley Fleck PLLP, Billings, Montana

       William M. Morris, E. Lars Phillips, Crowley Fleck PLLP, Bozeman,
       Montana

              Submitted on Briefs:  October 9, 2024
                 Decided:  December 3, 2024

Filed:

_____
                    Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Lake County appeals the District Court's dismissal of its complaint and award of judgment in favor of the State after the County sought reimbursement for its costs of enforcing state criminal jurisdiction on the Flathead Indian Reservation. We consider three issues:

> *1. Are Lake County's claims justiciable?*
>
> *2. Do the continuing tort or equitable tolling doctrines toll the statutes of limitations for Lake County's unfunded mandate and unjust enrichment claims (Counts I and II, respectively)?*
>
> *3. Does § 2-1-301(2), MCA, require the State to fully compensate Lake County for its costs incurred under P.L. 280?*

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 As a precondition to achieving statehood in 1889, Congress required Montana and its residents to "disclaim all right and title . . . to all lands . . . owned or held by any Indian or Indian tribes." Enabling Act, 50-180, §§ 1, 4(2), 25 Stat. 676, 676-77 (1889); *see also In re Estate of Big Spring*, 2011 MT 109, ¶ 47, 360 Mont. 370, 255 P.3d 121; Mont. Const. art. I ("all lands owned or held by any Indian or Indian tribes shall remain under the absolute jurisdiction and control" of Congress). In general, "the Federal Government and tribes, not states, retain jurisdiction over territories defined as Indian Country in 18 U.S.C. § 1151(a), which includes 'all land within the limits of any Indian reservation under the jurisdiction of the United States Government.'" *Big Spring*, ¶ 30 (citation omitted).

2

¶3     In 1953, during an era of federal policy that sought to terminate the "government-to-government relationship with Indian tribes," Congress enacted Public Law 280 (P.L. 280).  Robert T. Anderson, *Negotiating Jurisdiction: Retroceding State Authority over Indian Country Granted by Public Law 280*, 87 Wash. L. Rev. 915, 930 (2012); Act of Aug. 15, 1953, Pub. L. No. 83-280, 67 Stat. 588 (codified at 18 U.S.C. § 1162 and 28 U.S.C. § 1360).  Except for certain Indian reservations, P.L. 280 granted five states criminal and certain civil jurisdiction over all Indian Country within their borders.[1]  Sections 2-4, 67 Stat. at 588-89; Anderson, 87 Wash. L. Rev. at 930.  Pursuant to P.L. 280 § 7, other states, including Montana, could assume criminal jurisdiction over Indian Country without seeking tribal consent.  Section 7, 67 Stat. at 590.

¶4     The Montana Legislature enacted House Bill No. 55 in 1963, "obligat[ing] and bind[ing]" the State "to assume . . . criminal jurisdiction over Indians and Indian territory of the Flathead Indian reservation and country within the state" under P.L. 280 § 7. 1963 Mont. Laws ch. 81, § 1 (currently codified at § 2-1-301(1), MCA).  Before assuming P.L. 280 jurisdiction in Indian Country—whether on the Flathead Reservation or other Indian Country in Montana—the Legislature imposed a statutory consent procedure. *Lozeau v. Anciaux*, 2019 MT 235, ¶ 9, 397 Mont. 312, 449 P.3d 830.  The State first must obtain consent from the tribal council and from "the board of county commissioners of

---

[1] Congress amended P.L. 280 in 1958, granting a sixth state P.L. 280 jurisdiction.  Act of Aug. 8, 1958, P.L. 85-615, 72 Stat. 545 (1958).

each county that encompasses any portion of the reservation of the tribe."[2] 1963 Mont. Laws ch. 81, § 2 (currently codified at § 2-1-302, MCA); *see also Lozeau*, ¶ 9. Once the State receives consent from the tribal government and the relevant boards of county commissioners, the Governor must issue a proclamation within sixty days declaring that P.L. 280 "applies to those Indians and their territory or reservation." 1963 Mont. Laws ch. 81, § 2. The Governor may issue the proclamation only if the tribal resolution "has been approved in the manner provided for by the charter, constitution, or other fundamental law of the tribe." 1963 Mont. Laws ch. 81, § 2.

¶5     In May 1964, the Confederated Salish and Kootenai Tribal Council enacted Tribal Ordinance 40-A under the Tribes' Constitution, consenting to the State's assumption of P.L. 280 jurisdiction on the Flathead Reservation. *Lozeau*, ¶ 10 (citation omitted). Lake County subsequently adopted Tribal Ordinance 40-A, also consenting to P.L. 280 jurisdiction. Governor Babcock issued the required proclamation within sixty days; but the Tribal Council repealed, revised, and reenacted Tribal Ordinance 40-A in 1965. *Lozeau*, ¶ 10 (citation omitted). Governor Babcock issued another proclamation in 1965, effectuating the State's assumption of P.L. 280 jurisdiction on the Flathead Reservation. *State v. Dist. Ct. of Fourth Jud. Dist.*, 159 Mont. 156, 161, 496 P.2d 78, 80 (1972).

---

[2] At the time Montana passed this law in 1963, P.L. 280 § 7 allowed a state to unilaterally assume P.L. 280 jurisdiction. Congress repealed P.L. 280 § 7 in 1968 and required tribal consent before a state assumed P.L. 280 jurisdiction in Indian Country. Indian Civil Rights Act of 1968, P.L. 90-284, §§ 401(a), 402(a), 82 Stat. 77, 77-79 (1968). *See also Bryan v. Itasca Cnty.*, 426 U.S. 373, 386, 96 S. Ct. 2102, 2110 (1976).

¶6 In 1993, the Legislature amended § 2-1-306, MCA, allowing the CSKT "to withdraw their consent to [the] exercise of State criminal misdemeanor and civil jurisdiction." *State v. Spotted Blanket*, 1998 MT 59, ¶ 24, 288 Mont. 126, 955 P.2d 1347; 1993 Mont. Laws ch. 542, § 1. The Tribes subsequently withdrew their consent to most forms of criminal misdemeanor jurisdiction, which became effective in 1994 when Governor Racicot issued the required proclamation. *Spotted Blanket*, ¶ 24.

¶7 In 2017, the Board of Lake County Commissioners issued a resolution expressing that the County was unable to continue bearing the financial burden of P.L. 280 felony jurisdiction. Real property taxpayers, the County acknowledged, would bear the brunt of continued participation in P.L. 280. The County also had to divert resources from other services to fund its P.L. 280 law enforcement and detention obligations. Consequently, the County solicited public comment on its potential withdrawal from P.L. 280 and resolved to work with the Legislature to seek funding for its P.L. 280 responsibilities.

¶8 In 2021, the Legislature again amended § 2-1-306, MCA. 2021 Mont. Laws ch. 556, § 2. The 2021 amendment provided that

> after consulting with tribal government officials concerning withdrawal, the board of county commissioners of Lake County may, by resolution, withdraw consent to enforce criminal jurisdiction on behalf of the state of Montana over the [CSKT]. Within 6 months after receipt of the resolution, the governor shall issue a proclamation to that effect.

Section 2-1-306(3), MCA. The Legislature also amended § 2-1-301, MCA, requiring the State to "reimburse Lake County for assuming criminal jurisdiction under this section annually to the extent funds are appropriated by the legislature." 2021 Mont. Laws ch. 556, § 1. The 2021 Legislature appropriated $1 to reimburse Lake County.

5

¶9 In 2022, Lake County filed a complaint against the State of Montana, alleging three claims: unfunded mandate, unjust enrichment, and declaratory judgment. Lake County sought damages for its past and present costs incurred in carrying out P.L. 280 jurisdiction; restitution for the past and present value of P.L. 280 services provided; and a declaration that the State must reimburse the County for all future costs of fulfilling the State's P.L. 280 obligations. The State filed a motion to dismiss, which the District Court granted in part and denied in part. The court dismissed Lake County's unfunded mandate and unjust enrichment claims, ruling that the statutes of limitations had run. The court further ruled that the doctrines of continuing violation and equitable tolling did not toll the statutes of limitations. Considering the State's mootness and prudential standing arguments, the court denied the State's motion to dismiss the declaratory judgment claim.

¶10 The parties filed cross-motions for summary judgment on the declaratory judgment claim. The District Court ruled that "[n]othing in Mont. Code Ann. § 2-1-301 obligates the State to appropriate any particular dollar amount, range, or even a reasonable dollar amount, to reimburse Lake County's costs incurred pursuant to P.L. 280." Ruling that Lake County's proper remedy was to withdraw its consent to P.L. 280, the court granted the State's motion for summary judgment. Lake County appeals the District Court's dismissal of its claims.

## STANDARDS OF REVIEW

¶11 "We review de novo a district court's ruling on a M. R. Civ. P. 12(b)(6) motion to dismiss." *Hein v. Sott*, 2015 MT 196, ¶ 7, 380 Mont. 85, 353 P.3d 494 (citation omitted). We also apply de novo review to a district court's grant of summary judgment. *Hein*, ¶ 7

6

(citation omitted). We review a district court's interpretation of a statute for correctness. *Hein*, ¶ 7 (citation omitted).

## DISCUSSION

¶12 *1. Are Lake County's claims justiciable?*

¶13 The State first argues that none of Lake County's claims are justiciable. Citing *District Number 55 v. Musselshell County*, in which we held "that in the absence of a specific statutory or constitutional provision, one governmental subdivision may not sue another for damages," the State maintains that Lake County cannot point to such a provision that allows it to sue the State for damages. *Dist. No. 55 v. Musselshell Cnty.*, 245 Mont. 525, 529, 802 P.2d 1252, 1255 (1990). The State contends that § 1-2-112, MCA—the basis for Lake County's unfunded mandate claim—does not allow Lake County to seek damages against the State. Section 1-2-112(1), MCA, provides that when a law requires a local government unit to "provide a service or facility that requires the direct expenditure of additional funds and that is not expected of local governments in the scope of their usual operations [it] must provide a specific means to finance the activity." "[M]andates . . . that are considered necessary for the operation of local governments," which the State argues includes criminal law enforcement like this case, are exempted from the provisions of § 1-2-112(1), MCA. Section 1-2-112(4)(a), MCA. The State also asserts that § 1-2-112, MCA, does not contemplate the ability of a local government to sue the State for money damages; rather, the statute renders the unfunded law ineffective until the Legislature provides adequate funding. *See* § 1-2-112(1), MCA. Likewise, the State argues that Lake County lacks standing to bring its unjust enrichment claim because the

7

claim stems from the common law, not from a "specific constitutional or statutory provision." *Musselshell Cnty.*, 245 Mont. at 529, 802 P.2d at 1255.

¶14 Lake County responds that *Musselshell County* is inapplicable because that case addressed one political subdivision of the State suing another, not a county suing the State. *See Musselshell Cnty.*, 245 Mont. at 529, 802 P.2d at 1255. In that case, Lake County argues, the primary concern was that if one political subdivision had standing to sue another, it was the equivalent of the State "suing itself." *Musselshell Cnty.*, 245 Mont. at 529, 802 P.2d at 1254 (citation omitted). Lake County insists that the same concern is not at issue here because "a decision in Lake County's favor would redistribute the costs it presently incurs across a significantly larger tax pool better capable of bearing the burden." Lake County further maintains that § 1-2-115(4), MCA, provides an enforcement mechanism for § 1-2-112, MCA, that includes filing suit in district court. Lake County argues that § 1-2-116, MCA—titled "State agencies not to shift cost to local governments"—also provides authority for the County's damages claim because it allows a local government to appeal to district court an adverse determination by a state agency. *See* § 1-2-116(3)(b), MCA.

¶15 "Montana courts, like federal courts, may decide only justiciable controversies." *350 Mont. v. State*, 2023 MT 87, ¶ 14, 412 Mont. 273, 529 P.3d 847 (citation omitted). Standing is a justiciability doctrine that "asks whether the plaintiff asserting a complaint is the proper party to bring that matter to court for adjudication." *350 Mont.*, ¶ 14 (citation omitted). Standing is a threshold question in every case. *Heffernan v. Missoula City Council*, 2011 MT 91, ¶ 29, 360 Mont. 207, 255 P.3d 80 (citation omitted). Standing

8

doctrine has two branches: "the case-or-controversy requirement imposed by the Constitution, and judicially self-imposed prudential limitations." *Heffernan*, ¶ 31 (citations omitted). Montana's constitutional case-or-controversy standing inquiry requires that the plaintiff "clearly allege a past, present, or threatened injury to a property or civil right . . . that would be alleviated by successfully maintaining the action." *Heffernan*, ¶ 33 (citations omitted).

¶16 We agree with Lake County that our holding in *Musselshell County* does not preclude a county from suing the State for damages. *See Musselshell Cnty.*, 245 Mont. at 529, 802 P.2d at 1255 ("[I]n the absence of a specific statutory or constitutional provision, *one governmental subdivision may not sue another* for damages." (Emphasis added.)). *Musselshell County* did not address the instance where, as here, a governmental subdivision, such as a county, sues the State. *See Musselshell Cnty.*, 245 Mont. at 529, 802 P.2d at 1255.

¶17 The State maintains, however, that all of Lake County's claims raise a nonjusticiable political question. "[N]on-justiciable political questions include issues in the exclusive legal domain of the legislative branch, executive branch, or the will of the electorate at the polls." *Larson v. State*, 2019 MT 28, ¶ 39, 394 Mont. 167, 434 P.3d 241. "The political question doctrine [generally] excludes from judicial review [only] those controversies . . . which revolve around policy choices and value determinations constitutionally committed for resolution to other branches of government or to the people in the manner provided by law." *Larson*, ¶ 39 (citation and internal quotation marks omitted). The State asserts that Lake County "asks this Court to order the Legislature to

9

appropriate money to pay the County for the costs associated with enforcing [P.L.] 280 jurisdiction." As the power to appropriate lies exclusively with the Legislature, the State contends that Lake County's claims violate the political question doctrine. *See Meyer v. Knudsen*, 2022 MT 109, ¶ 13, 409 Mont. 19, 510 P.3d 1246.

¶18 We have considered claims brought by a county against the State without holding that the claims violated the political question doctrine. In 1981, the Legislature changed the method for taxing cars from a property tax to a flat fee system and agreed to reimburse counties for revenue lost due to the change. *Lewis & Clark Cnty. v. State*, 224 Mont. 223, 224, 728 P.2d 1348, 1349 (1986). Lewis and Clark County miscalculated its lost revenue, but the State would not allow the county to correct the figure. *Lewis & Clark Cnty.*, 224 Mont. at 226, 728 P.2d at 1350. After the county filed suit, the district court awarded the county damages and issued a declaratory judgment in the county's favor. *Lewis & Clark Cnty.*, 224 Mont. at 226, 728 P.2d at 1350. We affirmed the district court's decision without holding that the county's claims presented a nonjusticiable political question. *See Lewis & Clark Cnty.*, 224 Mont. at 228-29, 728 P.2d at 1351-52. Similarly, in *Missoula County v. State*, we did not find Missoula County's unjust enrichment claim against the State to be a nonjusticiable political question but analyzed it on the merits. *See Missoula Cnty. v. State*, 2024 MT 98, ¶¶ 29-36, 416 Mont. 340, 547 P.3d 1268.[3] Consistent with our precedent, Lake County's claims do not violate the political question doctrine simply

---

[3] Justiciability is "a threshold question which this Court must raise and address sua sponte even if it has not been raised by the litigants." *Moody's Mkt., Inc. v. Mont. State Fund*, 2020 MT 217, ¶ 18, 401 Mont. 168, 471 P.3d 68 (citing *Plan Helena, Inc. v. Helena Reg'l Airport Auth. Bd.*, 2010 MT 26, ¶ 13, 355 Mont. 142, 226 P.3d 567).

because the County seeks monetary relief from the State. Rather, whether the County has a viable claim for relief depends on its entitlement, or lack thereof, to a remedy under the statute. This is a merits determination we address later.

¶19 Finally, the State asserts that granting Lake County's requested declaratory relief would require a nonjusticiable advisory opinion. Because Lake County requests declaratory relief regarding the State's future reimbursement obligations, the State argues that the County requests advice on "what the law would be upon a hypothetical state of facts." *Broad Reach Power, LLC v. Mont. Dep't of Pub. Serv. Regul.*, 2022 MT 227, ¶ 10, 410 Mont. 450, 520 P.3d 301 (citation omitted). The Court must rely on hypothetical facts to resolve the declaratory relief claim, the State contends, because Lake County has the option to withdraw from P.L. 280 at any time. *See* § 2-1-306(3), MCA. The State also argues that even if Lake County prevailed on its declaratory judgment claim, this would lead only to ongoing litigation over the extent to which the Legislature must reimburse the County. Appropriations, the State reasserts, are solely within the purview of legislative power.

¶20 Lake County responds that its claim for declaratory relief is consistent with the purpose of the Uniform Declaratory Judgments Act. *See* § 27-8-102, MCA (The "purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights."). Lake County also maintains that its option to withdraw from P.L. 280 does not affect the Court's ability to issue relief because it has "liberal discretion to 'declare rights, status, and other legal relations whether or not further relief is or could be claimed.'" *Safeco Ins. Co.*

*v. Eighth Jud. Dist.*, 2000 MT 153, ¶ 31, 300 Mont. 123, 2 P.3d 834 (quoting § 27-8-201, MCA).

¶21     A justiciable controversy must be "definite and concrete such that it touch[es] legal relations of parties having adverse legal interests, and be a real and substantial controversy that enables relief through [a] decree of conclusive character." *Broad Reach Power*, ¶ 10 (citation and internal quotation marks omitted). Speculative or anticipatory judgments are nonjusticiable. *Broad Reach Power*, ¶ 10. We agree with Lake County that the availability of an alternative remedy—withdrawal from P.L. 280 under § 2-1-306(3), MCA—does not render its declaratory judgment claim nonjusticiable. *See Safeco Ins.*, ¶ 31 (quoting § 27-8-201, MCA). The case presents a definite and concrete dispute between two adverse parties: Lake County has alleged that it must divert funds from other County services, that it can no longer meet its P.L. 280 responsibilities on the Flathead Reservation, and that the State has obligated itself by statute to assume that responsibility. Lake County's declaratory judgment claim is justiciable and does not require an advisory opinion.

¶22     *2. Do the continuing tort or equitable tolling doctrines toll the statutes of limitations for Lake County's unfunded mandate and unjust enrichment claims (Counts I and II, respectively)?*

¶23     The District Court dismissed Lake County's unfunded mandate and unjust enrichment claims after ruling that the statutes of limitations for both claims had run. The court ruled that Lake County's claims had accrued, at the latest, in January 2017, when the Board of County Commissioners issued its resolution to withdraw from P.L. 280. Lake County filed its complaint five years later, in July 2022. The District Court ruled that Lake

County had two years to file the unfunded mandate claim and three years to file the unjust enrichment claim. Sections 27-2-211(1)(c), -202(3), MCA.

¶24 Statutes of limitations promote basic fairness and suppress stale claims. *Christian v. Atl. Richfield Co.*, 2015 MT 255, ¶ 13, 380 Mont. 495, 358 P.3d 131 (citations omitted). In general, the limitations period begins to run "when all elements of the claim or cause exist or have occurred." Section 27-2-102(1)(a), MCA. "A claim does not accrue under Montana law, however, until 'the facts constituting the claim have been discovered or, in the exercise of due diligence, should have been discovered by the injured party.'" *Burley v. Burlington N. Santa Fe Ry. Co.*, 2012 MT 28, ¶ 17, 364 Mont. 77, 273 P.3d 825 (quoting § 27-2-102(3), MCA). Known as the discovery rule, this statute applies when "the facts constituting the injury by their nature are concealing" or if "the defendant has taken some action that prevents the injured party from discovering the injury or its causes." *Burley*, ¶ 17 (citing § 27-2-102(3), MCA). Lake County does not dispute that the District Court correctly determined the applicable statutes of limitations for the unjust enrichment and unfunded mandate claims. *See* §§ 27-2-211(1)(c), -202(3), MCA. Nor does Lake County argue that the discovery rule is at issue. Thus, unless an exception to the statutes of limitations applies, Lake County's unjust enrichment and unfunded mandate claims are time-barred.

¶25 The continuing tort doctrine is an exception to statutes of limitations applicable when "a temporary injury . . . gives rise to a new cause of action each time that it repeats." *Burley*, ¶ 14 (citation omitted). "The distinguishing characteristic of a continuing tort is that it can be reasonably abated." *Christian*, ¶ 54. In *Christian*, we declined to extend the

13

continuing tort doctrine to plaintiffs' unjust enrichment claim because the only way to abate, or remedy, the unjust enrichment was through payment of monetary restitution. *Christian*, ¶ 54. More generally, we held that "[i]f the continuing tort doctrine were applied in cases where abatement is only possible through the payment of money for past wrongs, any suit seeking damages would arguably qualify as a continuing tort." *Christian*, ¶ 54. We held that this application would be inconsistent with the policy behind the continuing tort doctrine as an exception to statutes of limitations. *Christian*, ¶ 54.

¶26 Before the District Court, Lake County argued that the continuing tort doctrine tolled the statutes of limitations for its unfunded mandate and unjust enrichment claims. The District Court relied on *Christian* to conclude that the continuing tort doctrine did not apply to Lake County's claims. Because Lake County did not allege that its injury was concealed or is self-concealing and only money damages would remedy its injury, the District Court ruled that the continuing tort doctrine did not toll the statutes of limitations.

¶27 Lake County reiterates its continuing tort argument on appeal, asserting that the doctrine applies because Lake County's injury has continued unabated since 2017. The continuing tort doctrine applies equally to continuous infringements of statutory rights, the County argues, as it does to common law tort claims. The State argues that the continuing tort doctrine applies in continuing nuisance and trespass torts, but we have not applied the doctrine to a case like this, in which a county is suing the State for damages. *See Graveley Ranch v. Scherping*, 240 Mont. 20, 20-24, 782 P.2d 371, 371-74 (1989) (applying doctrine where lead batteries caused poisoning in neighbor's cows); *Shors v. Branch*, 221 Mont. 390, 395-97, 720 P.2d 239, 242-44 (1986) (interference with plaintiff's access to real

14

property); *Christian*, ¶¶ 7-9, 16-20 (nuisance and trespass claims from Anaconda smelter toxins); *Burley* ¶¶ 9, 18, 99 (nuisance and trespass claims from BNSF railyard pollutants). The State also maintains that our holding in *Christian*—that the continuing tort doctrine does not apply "where abatement is only possible through the payment of money for past wrongs"—should prevent the Court from applying the continuing tort doctrine here. *Christian*, ¶ 54.

¶28 Like the plaintiffs in *Christian*, Lake County seeks to apply the continuing tort doctrine where the only available abatement is the "payment of money for past wrongs." *See Christian*, ¶ 54. Specifically, Lake County requests a damages award and restitution for costs and services provided under P.L. 280. The remedies that Lake County requests— and the only ones available to satisfy its claims—are incongruent with the policy rationale underlying the continuing tort doctrine. The facts giving rise to the County's claims were never concealed or self-concealing, and the State took no action to prevent the County from discovering the injury or its cause. *See Burley*, ¶ 17. The County instead pursued a claim for damages to remedy an alleged past wrong—one of which it had knowledge in ample time to file a complaint after the claimed injury occurred. The District Court therefore did not err when it ruled that the continuing tort doctrine does not toll the statutes of limitations for Lake County's unjust enrichment and unfunded mandate claims.

¶29 Lake County asks the Court in the alternative to apply the equitable tolling doctrine, which allows "in limited circumstances for an action to be pursued despite the failure to comply with relevant statutory filing deadlines." *Schoof v. Nesbit*, 2014 MT 6, ¶ 33, 373 Mont. 226, 316 P.3d 831 (citation omitted). Equitable tolling may apply

15

when a party reasonably and in good faith pursues one of several possible legal remedies and the claimant meets three criteria: (1) timely notice to the defendant within the applicable statute of limitations in filing the first claim; (2) lack of prejudice to the defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim.

*Schoof*, ¶ 33 (citation omitted). Consequently, "while a party is pursuing one of several legal remedies, the statute of limitations on the remedies not being pursued is tolled." *Let the People Vote v. Bd. of Cnty. Comm'rs*, 2005 MT 225, ¶ 18, 328 Mont. 361, 120 P.3d 385. We have extended a narrow exception to the general equitable tolling doctrine rule, recognizing that the doctrine may apply "to those instances where a plaintiff is substantially prejudiced by a defendant's concealment of a claim, despite the exercise of diligence by the plaintiff." *Schoof*, ¶ 37.

¶30 Citing *Let the People Vote*, the District Court explained that the determinative inquiry for this issue is whether Lake County's negotiations with the Legislature qualified as the pursuit of a legal remedy sufficient to toll the statutes of limitations. *See Let the People Vote*, ¶ 18. The District Court ruled that Lake County was seeking a legislative resolution, not a legal remedy, in its negotiations with the Legislature and that therefore the equitable tolling doctrine did not apply. Lake County maintains that the equitable tolling doctrine should apply here because it is consistent with the doctrine's underlying policy. *See Schoof*, ¶ 34 (citation and quotation marks omitted) ("The policy behind the doctrine of equitable tolling is . . . to avoid forfeitures and allow good faith litigants their day in court."). As we have "reject[ed] any one-size-fits-all approach that would serve only to undermine the purpose of the equitable tolling doctrine and . . . deprive a plaintiff

16

of his or her rights," Lake County argues that the equitable tolling doctrine fits these circumstances. *Schoof*, ¶ 37 (citation omitted).

¶31 The State contends that our caselaw shows Lake County did not pursue the sort of legal remedy prerequisite to invoking the equitable tolling doctrine. The facts here, the State argues, are like the cases in which we have refused to apply the doctrine. *See Sorenson v. Massey-Ferguson, Inc.*, 279 Mont. 527, 530, 927 P.2d 1030, 1032 ("[T]he term 'legal remedies' does not include self-help measures such as informal efforts seeking intra-company remedies or warranty coverage."); *Let the People Vote*, ¶¶ 19-21 (refusing to apply doctrine where organization urged county commission to file suit but commission declined); *Seamster v. Musselshell Cnty. Sheriff's Off.*, 2014 MT 84, ¶ 12, 374 Mont. 358, 321 P.3d 829 (complaint against entity immune from suit not a legal remedy sufficient to apply equitable tolling). Conversely, the State points out, the Court has applied the doctrine when a plaintiff first filed an administrative or judicial action to enforce legal rights related to the same underlying cause of action. *See Lozeau v. Geico Indem. Co.*, 2009 MT 136, ¶¶ 4-5, 15-18, 350 Mont. 320, 207 P.3d 316 (plaintiff's suit in tribal court tolled statute of limitations on state court claims); *Chance v. Harrison*, 272 Mont. 52, 55-57, 899 P.2d 537, 539-40 (1995) (filing suit in district court tolled statute of limitations for claim before Montana Human Rights Commission); *Nicholson v. Cooney*, 265 Mont. 406, 411-13, 877 P.2d 486, 489 (1994) (filing declaratory judgment action in this Court tolled statute of limitations for district court action).

¶32 Lake County cites no case in which we have applied equitable tolling when the party did not previously file an administrative or judicial action. Nor does argue it that the State

concealed the County's claims. *See Schoof*, ¶ 37. Lake County reasonably may have sought a political resolution to the dispute, but it did not pursue a legal remedy within the reach of the equitable tolling doctrine. Lake County's unfunded mandate and unjust enrichment claims are time-barred.

¶33 *3. Does § 2-1-301(2), MCA, require the State to fully compensate Lake County for its costs incurred under P.L. 280?*

¶34 Lake County sought a declaratory judgment from the District Court "establishing the State's obligation to reimburse Lake County for costs incurred in going forward in fulfillment of the State of Montana's obligations" under P.L. 280 and § 2-1-301, MCA. Section 2-1-301(2), MCA, provides that "[u]nless the [CSKT] or Lake County withdraws consent to enforcement . . . the state shall reimburse Lake County for assuming criminal jurisdiction under this section annually to the extent funds are appropriated by the legislature." The District Court ruled that the plain language of § 2-1-301, MCA, obligates the State to reimburse Lake County only to the extent it sees fit. The District Court reasoned that Lake County's proper remedy was to withdraw from its P.L. 280 responsibilities. *See* § 2-1-306(3), MCA ("[A]fter consulting with tribal government officials concerning withdrawal, the board of county commissioners . . . may, by resolution, withdraw consent to enforce criminal jurisdiction on behalf of the state of Montana over the Confederated Salish and Kootenai tribes.").

¶35 Lake County argues that § 2-1-301(2), MCA, must be read in conjunction with § 2-1-301(1) and -306(3), MCA, which together require the State to fully reimburse the County for its P.L. 280 costs. *See Mont. Indep. Living Project v. Dep't of Transp.*, 2019

18

MT 298, ¶ 21, 398 Mont. 204, 454 P.3d 1216 (citation omitted) ("[W]e read and construe a statute as a whole to give effect to its purpose and avoid an absurd result."). Because "the [S]tate of Montana . . . obligates and binds itself to assume" P.L. 280 jurisdiction through § 2-1-301(1), MCA, and because § 2-1-306(3), MCA, permits the County to withdraw from assuming exercise of the State's jurisdiction, Lake County insists that the State also obligates itself to pay for the costs of assuming jurisdiction. Lake County maintains that the District Court's interpretation of the statutes leads to absurd results, in part because § 2-1-301(2), MCA, requires that "[t]he annual amount of reimbursement must be adjusted each year based on the consumer price index." Finally, Lake County asserts that § 2-1-301, MCA, must be understood in the context of Congress's intent in enacting P.L. 280.

¶36 The State responds that the plain language of § 2-1-301(2), MCA, and the surrounding statutes supports the District Court's conclusion. Lake County, the State argues, asks the Court to read the modifying clause ("to the extent funds are appropriated by the [L]egislature") out of § 2-1-301(2), MCA, which we cannot do. *See Bryer v. Accident Fund Gen. Ins. Co.*, 2023 MT 104, ¶ 42, 412 Mont. 347, 530 P.3d 801 (citation omitted) ("It is not a court's function to insert what has been omitted or omit what has been inserted . . . .").

¶37 Our first step in statutory construction is to "look to the plain meaning of the words used." *Bryer*, ¶ 42. "When the language of a statute is plain, unambiguous, direct, and certain, the statute speaks for itself and no further interpretation is required." *Bryer*, ¶ 42. Our interpretation also relies on placing a statute in the statutory context in which it

19

appears. *Bryer*, ¶ 42 (citation omitted). The statute at issue expressly limits the State's obligation to reimburse Lake County for assuming criminal jurisdiction "to the extent funds are appropriated by the [L]egislature." Section 2-1-301(2), MCA. Its meaning is plain and direct: Lake County will be reimbursed only if the Legislature chooses to appropriate the money. Nor does the statute as a whole conflict with the plain language of § 2-1-301(2), MCA. Section 2-1-301(1), MCA ("Montana . . . obligates and binds itself to assume" P.L. 280 jurisdiction), does not provide that the State must fund Lake County's P.L. 280 costs. The Legislature conditioned the State's assumption on county consent, which the County provided. Section 2-1-306(3), MCA, allows the County to withdraw its consent to enforce criminal laws on the Flathead Reservation. But it does not, as Lake County contends, provide that the State must fund the County's P.L. 280 costs. The Legislature has the prerogative to determine appropriations of money from the State treasury, and § 2-1-301(2), MCA, reserves to that body the discretion to make such determinations. *See Meyer*, ¶ 12 (citing *Bd. of Regents v. Judge*, 168 Mont. 433, 446, 543 P.2d 1323, 1331 (1975)). Because the statute is plain and unambiguous, we do not reach the parties' remaining arguments. The District Court correctly granted the State's motion for summary judgment on Lake County's declaratory judgment claim.

**CONCLUSION**

¶38 Lake County's unjust enrichment and unfunded mandate claims are time-barred. Its declaratory judgment claim fails under the plain language of § 2-1-301(2), MCA, which reserves to the Legislature discretion to determine whether and how much to fund the

20

County's P.L. 280 costs on the Flathead Reservation. The District Court's rulings on the State's motions to dismiss and for summary judgment are affirmed.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ JIM RICE

Justice James Jeremiah Shea did not participate in the decision of this matter.